Enrique Garza
#18258-018
USP
P.O. Box 1000
Lewisburg, PA.
17837

Petitioner in Pro Se.





# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ENRIQUE HENRY GARZA
    Petitioner,

v.

DONALD ROMINE, WARDEN
    Respondent.

# 1: CV01-1128

Cr-96-19-ORL-18

Case No:

Petitioner's Memorandum of Law in Support of Petition For Writ of HABEAS CORPUS Pursuant to title 28 USC, Section 2241

    COMES NOW petitioner Enrique Henry Garza, in pro se, pursuant to Title 28 U.S.C, Section 2241, and petitions this Court for writ of habeas corpus, based upon the record generated herein and submit the following in support:

## Jurisdiction

1. Petitioner ENRIQUE H. Garza challenges in this action the sentence and conviction, because Petitioner was sentence and convicted in violation of the

Sixth Amendment to the United States Constitution,
Denial of effective assistance of counsel.

2. The factors that enhanced Petitioner's sentence beyound
the prescribed statutory maximum penalty were not
set Forth in the indictment, nor submitted to a jury to
be found as elements of the offense and proven by
proof beyond a reasonable doubt, in violation of the
Fifth Amendment presentment clause and due process
clause, as well as the Sixth Amendment notice and
jury trial guarantees, required by the United States
Supreme Court's holding in Apprendi v. New Jersey,
530 U.S ___, 147 L. Ed. 435, 120 S. Ct. 2348
(2000).

3. Presentence Investigation of Petitioner was used
by court to sentence Petitioner as a Category
VI with the use of unqualified priors that do not
fall under serious drug offenses under 18 USC § 3559
or 18 § 924 (e)(2)(A)(i)(ii), which makes sentence
unconstitutionally void. the court was without jurisdiction
to impose such sentence.

Memorandum in support of Petitioners
claim of a §2255 petition or §2241
is inadequate.

1. Petitioner Enrique Garza filed a notice of Appeal and
brief as to his conviction and sentence of 480 month
in Case No. 96-19-Cr-Orl-18, there was no prior §2255
Motions

2. In Summary Petitioner in his direct appeal challenged the
sufficiency of the evidence to support the conspiracy
conviction, the 40 pound quantity of methamphetamine
attributed to him and the ruling of the court that he
acted as organizer and leader.
On August 18, 1997 the 11th Cir. Affirmed the conviction
On July 17, 1998 Petitioner file a 28§2255 raising
issues of ineffectiv assistance of counsel, (98-824-Civ-
Orl-18) On Sept. 28, 1998, Petitioner filed a memorandum
in support of motion to vacate unde 28 U.S.C. 2255.
the Document was stricken pursuant to Order [300]
and returned to Petitioner 09/28/98
On 19/30/98 Judge G. Kendall Sharp signed an Order,
striking support memorandum for failure to obtain prior
approval of court before amending the 2255 motion,
and for lack of signature. In So doing so, Petitioner
was denied reasonable opportunity to obtain a reliable
judicial determination of the legality of his conviction
in a 28 USC 2255 claim. the original 2255 was

denied and dismissed with prejudice on 3/17/99

3. Petitioner in this Petition, is invoking the Supreme Courts holding in Apprendi v. New Jersey, 530 U.S __, 147 L.Ed. 435, 120 S. Ct. 2348 (2000).
To date, the US Court of Appeals for the First, Seventh, Eighth and Eleventh Ciruits have held that Apprendi claims are not retroactively available on second or successive 28 USC § 2255 Motions. Roger v United States, 2000 U.S App Lexus 25455 (8th Cir. Oct. 13, 2000); Talbott v. Indiana, 2000 US App. Lexis 22607 (7th Cir. Aug. 30 2000); US v. Sustache-Rivera, 221 F.3d 8, 10-11 (1st Cir 2000) Wofford v. Scott, 177 F.3d 1236.1242 (11th Cir 99); In re Joshua, NO. 00-14328 (11th Cir 2000) all four courts have held that until the Supreme Court announces Apprendi is retroactively applicable to cases on collateral review, the courts will not entertain second or successive petitions base on the rule announced in Apprendi.

        Petitioner now states that any petition to the court of the 11th Circuit for Petition to file a second or successive 2255 or a 2241 with be barred.
        Petitioner now seeks § 2241 relief based on the view expressed in West v. Vaughn, 204 F.3d 53, 66 CrL 513 (3d Cir. 2000) Petitioners Petition is meritorious and is timely.

## Statements OF Facts

On February 2, 1996, Enrique Garza was arrested and was named in a seven count indictment on February 8, 1996. charging conspiracy to possess with Intent to Distribute a quantity of a mixture and substance containing a detectable amount of methamphetamine. 21 USC 846, 21 USC 841(a)(1)

Possess with Intent to Distribute a quantity of a mixture and substance containing a detectable amount of Methamphetamine. 21 USC 841(a)(1) 18 USC 2

Attempt to Possess with Intent to Distribute a quantity of a mixture and substance containing a detectable amount of Methamphetamine. 21 USC 846

On March 7, 1996, Enrique Garza was arraigned and entered a plea of Not guilty.

On May 1, 1996, (First day) Trial by jury before Judge G.K. Sharp, for Enrique Garza.
On May 2, 1996, the jury returned a verdict of guilty on Counts 1, 6, 7 and Not guilty as to count 4. Judge Sharp granted a Judgement of acquittal on counts 3 and 5

On July 17, 1996 Judge G.K. Sharp sentenced Petitioner Enrique Garza to a term of 480 months imprisonment; 10 years supervised release.

Petitioner filed a Notice of Appeal on 7/19/96 to the United States Circuit Court of Appeals 11TH Circuit which denied Appeal and Affirmed the conviction on 9/17/97

Petitioner filed a Motion 28§2255 civil 98-824 civ—orl-18 on 7-17-98
Petitioners Motion for relief was denied on 4/8/99
Petitioner is currently serving that sentence

## Statement Of The Case

(a)(1) On July 17, 1996, while before the court for sentencing, Attorney for Petitioner failed to object to the PSI information for criminal History enhancements according to USSG §4B1.1, a career offenders category VI. [sentencing transcript page 16 and 17] "exhibit D"

(2) On July 25, 1996, a letter written and sworn to by Robin A Gilliard whom by marriage became Robin Beaver, see criminal Docket # 96-cr-19-All page 13 entry 3/7/96 (exhibit (B)) the letter is notarize by a notary public and is addressed

See [Letter] exhibit F

To, Jack T. Edmund, attorney for Petitioner. the letter contained information as to the two co-defendants charged in the seven count indictment, Robin Gilliard and Bruce Beaver. the letter disclaimed all prior statements by Robin Gilliard Beaver to Special Agent Ladner and information as to the dealings of Bruce Beaver and Enrique Garza that contradict trial testimony by witnesses of the governments case that could have helped Petitioner at trial and at sentencing, due to the fact that the PSI used at sentencing stated that on at least ten occasions Robin Gilliard made trips to Orlando to purchase 1/2 pound or more of methamphetamine and was sold to Enrique Garza (PSI par. 20 page 4) this information would have help Petitioner as to the drug quantity attributed to him. "Robin Gilliard also testified in court" for government Petitioners Attorney failed to attempt to bring it up to the trial Court and to the Appeals court.

(3) Petitioners Attorney failed to object to the Supplemental information Pursuant To 21 U.SC § 851 that was Improperly filed. the offenses of conviction were felonies of two prior control substance, which were not serious drug crimes under the definition of serious drug crimes as required, because each conviction involved only one gram of methamphetamine, the use would not

qualify under 18§3559 (H) ii  or  3559 (c)(V)(i)(ii) and (B)

<u>Derfense Counsel's Deficient Performance rendered the Sentencing and Appeal Proceedings Constitutionally Inadequate, In Violation of Defendants Sixth Amendment Right To Effective Assistance Of Counsel and his Fifth Amendment Right to Due Process Of Law.</u>

Right to Effective Assistance of trial counsel, <u>Strickland v. Washington</u>, 466 U.S. 668, 684-85, 104 S.Ct. 2052, 2063, 80 L.Ed. 2d 674 (1984) <u>Wood v. Georgia</u>, 450 U.S 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed. 2d. 220 (1981). The guarantee of effectiv assistance of counse comprises two correlative rights: (1) the right to reasonably competent counsel and (2) the right to counsel's undivided loyalty.

(b) 1.

Petitioner contends that a change in th law/or new constitutional rule, effectuated by a 2000 decision of the Supreme Court in <u>Apprendi v. New Jersey</u>, supra, renders his sentence and conviction constitutionally invalid and allows him to hurdle the one year limitation bar that might otherwise applicable to the instant Petition.

(8)

In _Apprendi_, the Supreme Court held that the right to due process of law and the right to a jury trial read together, indisputably entitles a defender to a jury determination that he is guilty of every fact that increases the penalty of the crime beyound the prescribed satutory maximum. In so ruling, the Supreme Court invalidated prior holding in _United State v. Gibbs_, 812 F.2d 596 (3rd Cir 1987) (The amount of [controlled substance] is a factor bearing upon sentencing, rather than guilt). Id. at 603

In _United States v. Murphy_, 109 F. Supp 2d. 1059 (2000), the court found that the new constitutional rule in Apprendi decision, compels that the actual type and quantity of a controlled substance is a crital element of the offense under 21 USC. § 841; and mandating it to be submitted to the jury and prove beyond a reasonable doubt. Accordingly, the court found that the new constitutional rule was substantive, rather than procedural, it must be accorded retroactive application.

(2) Petitioner was convicted of 21 USC § 841 A(a)(1) and 846, and was sentenced under 841 (b)(1)(A)(viii). The indictment never alleged a violation of 21 USC § 841 (b)(1) (A) nor did the jury instuctions submitted to the jury.

Petitioner was found by the court, to have been responsible for the amounts in the conspiracy, whiched was in the amount of 40 pounds Attributed to Enrique Garza just on the bald finding the court made its conclusion. [Rule 32 (b)

(9)

(1)(A) (B)] was violated by the court. Petitioner was sentenced to 480 months in prison although the govern ment filed an information before trial, 21 USC § 851 and requested that the court give Petitioner a life sentence, the court rejected it and the government did Not Appeal the rejection or object to the courts sentence. so as the governments 851 enhancement was abandoned as noted for its failure to object or Appeal, the sentence was imposed under a category XI (6) career offender. which also was error by the court. in part of the priors listed by the [probation officers PSI], Enrique Garza's priors weren't qualified predicate priors under the serious drug crimes; 18 USC § 3559 (c)(1)(A)(ii) or (2)(H)(i)(ii). Enrique Garza's two priors listed in the PSI for offenses consisted of convictions on the date of February 5, 1991, and July 5, 1994. those offenses only involved 1 gram of methamphetamine one was a simple possession, the other was a sale of methamphetamine approximately one gram. these priors are not qualified and Petitioner never waived his right to challenge the use of said priors, due to the courts failure to satisfy the requirements under 21 § 851 (b) in part; with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which was not made before sentence is imposed may not thereafter be raised to attack the sentence. [Transcript of sentencing; 17, 18] the court made no ruling as to 851

enhancements and adopted the Guideline Provisions: total offense level of 40 and a criminal history category VI, imprisonment range of 360 months to Life. See U.S v Rogers, 228 F.3d 1318 (11th Cir 2000), citing Jones v U.S, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and Apprendi v. New Jersey, ___ U.S. ___, 120 S.Ct 2348, 147 LEd.2d 435 (2000) Petitioners position is that the indictment failed to charge a crime. That is, Petitioner was not charged by the grand jury as to the (b) portion of Title 21 U.SC. § 841, but was convicted and sentence under the (b) portion of § 841. See, 21 U.S.C. § 841 (b). The term "penalties" under 841 (b) is an umbrella phrase, its panel protecting against at least four different species of unlawful acts, ie., 841 (b)(1)(A), (b)(1)(B), (b)(1)(C) and (b)(1) D. It is a generic term that can charge dramatically with each indictment.

For example, 841 (b)(1)(A) penalties involve a 10 year or greater mandatory sentence; (b)(1)(B) penalties involves a 5 year or greater mandatory sentence; (b)(1)(C) penalties involve 0 to 20 year sentences; and (b)(1)(D) penalties involves 0 to 5 years sentences, providing defendants have no prior drug convictions that qualify for enhancements.

In short, before an offense such as § 846 can be titled as an offense, two or more individuals must agree to commit some unlawful offense in Chapter 13 of the Drug Abuse Prevention and Control Act, which

has a prescribed penalty. Iannell v. United States, 420 u.s. 770 (1975). Even though subchapter I, part D § 841 (a)(1) is entitled as "unlawful act" and cited as the governments jurisdictional authority to prosecute; no prescribed penalty is enumerated in § 841 (a)(1). See <u>Lanzetta v. New Jersey</u>, 305 u.s. 451 (1939) ("Due process should not require one to speculate as to the meaning of penal statute"). <u>Id</u>.

It is the punishment prescribed which makes an act a crime, not mere interdiction of conduct without punishment. <u>United States v. Martinez-Gonzales</u>, 89 F. Supp. 62; <u>Apprendi</u>, supra., Justice Thomas, concurring; 21 Am. Jur. 2d Crim. Law § 5 ("To consti tute crime, the act in question must ordinarily be one to which is annexed, upon conviction, a certain specified punishment, and it has been held that a statute declar ing an act unlawful, but prescribing no penalty, does not create a crime") Id. Accordingly, because the indicment in Enrique Garzas case did not allege the penalty statute 841 (b), the indicment failed charge a crime. The plain language of § 846 makes § 841 (b) an element of the conspiracy that must be alleged in the indicment. the conspiracy found under 846 had as its sole object the violation of 841 (a)(1) than for the proposition of punishment, the violation cannot be one and of itself. In that connection, one of the enumerated subsections of 841 (b), must be incorporated by

reference as the object of the conspiracy. So the indictment that has no criminal penalty —— it found guilty and sentenced to an uncharge §841 (b), under one of it's several available sentencing pre-requisites does not provide fair notice and offends due process clause of the Constitution's Fifth Amendment.

See, Jones v. United States, 526 U.S. 227, n.6 (1999)(enhancement elements must be "charged in an indictment"). See also, United States v. Hoang Van Tran, No. 99-1278(L) and 99-1389, argued: April 7, 2000 decided: November 15, 2000, holding that the district court lacked jurisdiction to try, convict or sentence a defendant for a offense not charged in the indictment. Again, Enrique Garza was convicted and sentenced under 846, 841 (a)(1) (b)(1)(A). the indictment Never charged 841 (b)(1)(A), nor was it presented to the jury find beyond a reasonable doubt tha Enrique Garza was guilty.

Because the grand jury returned an indictment without a specified amount of a controlled substance, the indictment failed to charge an essential element of the crime. Such a violation is reversible error even without showing of prejudice. United States v. Wozniak, 126 F.3d 105.

(13)

C. (1.)

Petitioner Enrique Garza, now it his closing and final ground and facts, It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." Id. (citing Jones, 526 U.S. at 252-53 (Steven J., concurring). Apprendi makes it clear that whenever the statutorily permissible punishment varies according to the presence or absence of an identifiable fact or element described within a statute, that fact must be pleaded in the indicment and found by the jury beyond a reasonable doubt.

Apprendi, compels that petitioner is actually or legally innocent of his conviction and sentence. See, Bousley v. United States, 140 L.Ed 2d 828, holding since [the jury] had been misinformed by the district court as to the nature of the charged crime; and if the record disclosed that at the time of the [trial] ... the district court did not correctly understand the essential elements of the crime with which the accused was charged, then the [conviction] is invalid under the federal constitution.

(14)

The fact that the district court acted in good faith reliance on existing precedent does not mitigate the impact of that erroneous advice to the jury. Its consequences for the defendant were just as severe and just as unfair, as if the judge had knowingly conspired with the prosecutor to convict him of a crime that he did not commit. Id at 842.

<u>Indictment</u>

An indictment is sufficient if it meets two requirements:

(1) It contains the element of the offense and contains sufficient facts and circum stances to fairly inform the accused of the specific offense; and

(2) It contains sufficient information to allow him to plead an acquittal or conviction in bar of future prosecutions for the same offense.

<u>Hamling v. United States</u>, 418 U.S. 87 (1974). The Sixth Amendment confers a right "to be informed of the nature and cause" of a criminal accusation. The charging document must therefore provide notice of the charges, adequate for preparation of the defense. <u>Russell v. United States</u>, 396 U.S. 749 (1962).

To these ends, Federal Rules of Criminal Procedure 7(c) requires a plain, concise and definite

written statement of the essential facts constituting
the offense charged"

A deficient indictment, requires a defendant to
go to trial with the chief issue undefined. It enable
his conviction to rest on one point and the affirmance of
the conviction to rest on another. It gives the prosecution
free hand on appeal to fill in the gaps of proof by surmise
or conjecture. Russell, supra, at 766

The indictment secures the fifth Amendment
guarantee "that the accused is to be tried only on such
charges as a grand jury has returned" Id. at 771. Thus, even
if it provides adequate Notice, an indictment is defective
unless the grand jury agreed on the facts constituting each
essential element.

"The purpose of this requirement ... is to limit [a defen-
dant's] jeopardy to offenses charged by a group of his fellow
citizens acting independently of either prosecuting attorney
or judge. To allow the prosecutor or the court to guess what
was in the minds of the grand jurors at the time they returned
the indictment would deprive the defendant of his 'basic
protection! for a defendant could then be convicted on the
basis of facts not found by, and perhaps not even presented
to, the grand jury which indicted him? Id at 770-771.
Petitioner Enrique Garza, now opens this matter to
the attention of the court, See Indictment, counts
1, 3,4, 5, 6, and 7 "Exhibit C" Petitioner direct

the court to the attention of the charged substance listed, the quantity of a mixture and substance containing a detectable amount of methamphetamine, a controlled substance listed in "Schedule I of Title 21 U.S.C. Section 812, in violation of Title 21"

Petitioner now ask this court to See Section 812 of title 21 U.S.C. Schedule III (a) (3) any substance (except an injectable liquid) which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers.

Methamphetamine is not a schedule I as the indictment charges, and the government mislead the grand jury and the jury that convicted the Defendant Enrique Garza of a defective charge of indictment.
No jury could have found Petitioner guilty of the charged Indictment when the indictment is constitutionally invalid. also, government never proved at trial, by expert qualified witness that substance was Methamphetamine trial transcript; 250, 251. Sentence and conviction must be reversed and dissmiss with prejudice.

conclusion, even without the invalid indicment,
Petition should have only received a Maximum
of five years under 841 (b)(1) D because the
quantity was never charged or submitted to the
jury. Apprendi
  the government defaulted and the court had
  no jurisdiction to try Enrique Garza

               Relief Sought
   Wherefore, Petitioner Enrique Garza moves
this Honorable Court to grant the following:

   (a) Accept jurisdiction over this case pursuant
   to 28 USC § 2241;
   (b) hold such evidentiary hearings as this
    Court may deem necessary or appropriate;
   (c) Issue a Writ of Habeas Corpus freeing
       Petitioner from his unconstitutional
       confinement:

                    Respectfully submitted,

                 Signed: Enrique Garza
     date 6-13-01      Enrique Garza #18258-018
                       USP
                       PO Box 1000
                       Lewisburg, PA.
                                      17837

                    (18)

# 1: CV01-1128
## INDEX TO APPENDIX

| Exhibit: | Number: | Page: |
|---|---|---|
| Order by Court Denying 2255 | 1 | A-1 |
| Criminal Docket for # 96-CR-19-All | 2 | B-1 |
| Indictment | 3 | C-1 |
| TRASCRIPT OF Sentencing | 4 | D-1 |
| Judgement In A Criminal Case | 5 | E-1 |
| Letter By Robin Beaver | 6 | F-1 |
| Jury Instructions | 7 | G-1 |
| Presentence Investigation Report | 8 | H-1 |

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                               CASE NO. 96-019-CR-ORL-18
                                                           (98-824-CIV-ORL-18)

ENRIQUE GARZA,

    Defendant.

---

<u>ORDER</u>

    This case involves a motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 filed by Enrique Garza. The Government filed a timely response to the section 2255 motion in compliance with this Court's instructions and with *The Rules Governing Section 2255 Cases in the United States District Courts*.

    Defendant alleges that he received ineffective assistance of counsel.

***Procedural History***

    In February of 1996, a federal grand jury returned a seven count indictment against Defendant and others. Defendant was charged as follows: count one, conspiracy to possess with intent to distribute methamphetamine; count three, possession with intent to distribute methamphetamine; count four, possession with intent to distribute methamphetamine; count five, possession with intent to distribute methamphetamine; count six, possession with intent to distribute methamphetamine; and count seven, attempt to possess with intent to distribute methamphetamine.

Defendant proceeded to trial. At the close of the Government's case, the district court granted Defendant's motion for judgment of acquittal as to counts three and five. The jury subsequently found Defendant guilty of counts one, six, and seven, but not guilty of count four. The Court then adjudicated Defendant guilty of conspiracy to possess with intent to distribute methamphetamine, possession with intent to distribute methamphetamine, and attempt to possess with intent to distribute methamphetamine. Defendant was sentenced to a 480 month term of imprisonment, followed by ten years of supervised release.

Defendant filed a direct appeal with the Eleventh Circuit Court of Appeal, raising three issues: (1) the sufficiency of the evidence regarding his role in the conspiracy, (2) the quantity of methamphetamine attributed to him, and (3) the four level enhancement assessed based on his role as an organizer and leader. On August 18, 1997, Defendant's conviction and sentence were affirmed. Mandate issued on September 17, 1997.

## Claim One

Defendant alleges that he received ineffective assistance of counsel, as follows: (a) counsel failed to seek an evidentiary hearing regarding Defendant's role in the conspiracy; (b) counsel did not request an evidentiary hearing after the trial, but before sentencing, in order to give the Court the facts for sentencing; (c) counsel did not object to the use of testimony garnered from others in exchange for sentencing recommendations; and (d) "[a]dditional discoverable evidence concerning the

2

question[ing] of **Task Force Officers** history of drug abuse could have served to prove the Defendant's role was exagerated [sic] by an agent with a personal ax to grind."

### A.    *The Standard*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90.[1] "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.), *cert. denied*, 493 U.S. 945 (1989).

### B.    *Issues (a) and (b)*

In issues (a) and (b), Defendant essentially complaints that counsel permitted him to be characterized as a "major player" who was accountable for the entire forty pound

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

conspiracy.   Defense counsel raised these issues both at sentencing and on appeal.

Defendant's bare allegations do not demonstrate that counsel's performance regarding

these issues was deficient or that Defendant suffered any prejudice.   Accordingly, these

two issues must fail.

### C.     Issue (c)

Defendant also assigns error to counsel's failure to object to Government

testimony allegedly procured in violation of 18 U.S.C. § 201(c)(2).   In support of this

argument, Defendant cites to the Tenth Circuit Court of Appeals' opinion in *United

States v. Singleton*, 144 F.3d 1343 (10th Cir. 1998).   However, this opinion is no longer

good law.   The Tenth Circuit *en banc* court vacated the panel decision, *United States v.

Singleton*, 144 F.3d 1343, 1361 (10th Cir. 1998), and reheard the appeal.   On rehearing,

the *en banc* court held that "18 U.S.C. § 201(c)(2) does not apply to the United States

or an Assistant United States Attorney functioning within the official scope of the

office." *United States v. Singleton*, No. 97-3178, 1999 WL 6469, at *1 (10th Cir. Jan. 8,

1999).   Moreover, the Eleventh Circuit Court of Appeals specifically rejected the

*Singleton* panel decision, holding that "agreements in which the government trades

sentencing recommendations or other official action or consideration for cooperation,

including testimony, do not violate 18 U.S.C. § 201(c)(2)." *United States v. Lowery*, 166

F.3d 1119, 1124 (11th Cir. 1999).

4

Clearly, Defendant has not and cannot show prejudice for counsel's failure to raise the *Singleton* issue. If no prejudice has been demonstrated, there is no need to address a claim that counsel was deficient. *Alvord v. Wainwright*, 725 F.2d 1282, 1289-90 (11th Cir.), *cert. denied*, 469 U.S. 956 (1984). Defendant is not entitled to relief on this claim.[2]

**D.    Issue (d)**

In his final issue, Defendant states that "[a]dditional discoverable evidence concerning the question[ing] of **Task Force Officers** history of drug abuse could have served to prove the Defendant's role was exaggerated [sic] by an agent with a personal ax to grind." Defendant has not identified any particular task officer or provided any further information regarding this issue.

Only three law enforcement agents testified during the Government's case: David Ceinski, Michael T. Kolehmainen, and R. Don Ladner. Special agent Ceinski investigated the methamphetamine distribution into Orlando. (Trial Transcript at 185.) Task force agent Kolehmainen was a member of a team of individuals who conducted surveillance at the time Defendant was arrested. Agent Kolehmainen only identified a co-defendant and did not give any testimony directly identifying or implicating

---

[2]Furthermore, as noted by the Eleventh Circuit Court of Appeals, only three reported cases contained any analysis similar to this issue prior to the *Singleton* panel decision. *See United States v. Lowery*, 166 F.3d 1119, 1123 (11th Cir. 1999). Clearly, counsel's failure to raise the issue was not unreasonable given the prevailing acceptance of the government's use of sentencing recommendations in return for truthful testimony and cooperation.

Defendant. *Id.* at 224-32. Special agent Ladner was a member of the entry team that affected the arrest of Defendant in a motel room. Special agent Ladner's testimony was limited to his observations at the time the arrest was made and the substance of an interview with a co-defendant immediately following the arrest. Defense counsel thoroughly cross-examined special agent Ceinski, but chose not to cross-examine either agent Kolehmainen or agent Ladner. *Id.* at 202-16, 232, 242.

It is the professional judgment of counsel that governs whether or not to cross-examine a witness. Defendant has not set forth any reason to doubt that counsel exercised competent professional judgement. Defendant's bald assertions are inadequate to overcome the presumption that counsel acted reasonably. *Matura v. United States*, 875 F. Supp. 235, 237 (S.D.N.Y. 1995). Furthermore, the two witnesses who were not cross-examined did not provide evidence directly implicating Defendant. Defendant has not demonstrated that he was prejudiced by the cross-examination strategies employed by his counsel. *Cf. Aldrich v. Wainwright*, 777 F.2d. 630, 637 (11th Cir. 1985), *cert. denied*, 479 U.S. 918 (1986) (speculation insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.) Defendant has not shown either deficient performance or prejudice; thus, this issue also must fail.

Any of Defendant's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the motion to

vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 filed by

Enrique Garza (Doc. No. 188) is **DENIED**, and this case is **DISMISSED** with prejudice.

**DONE AND ORDERED** at Orlando, Florida, this ___17___ day of March, 1999.

G. KENDALL SHARP
UNITED STATES DISTRICT JUDGE

Copies to:
sa 3/16
Enrique Garza
Counsel of Record

7

```
Proceedings include all events.                                   APPEAL
6:96cr19-ALL  USA v. Garza, et al                         PRIOR  SL DOC
                                                          CLOSED DAB
```

| Date | No. | Entry |
|------|-----|-------|
| 2/20/96 | 34 | ARREST WARRANT returned executed as to Bruce F. Beaver on 2/15/96. (bmg) [Entry date 02/21/96] |
| 2/20/96 | 35 | ARREST WARRANT returned executed as to Robin A. Gilliard on 2/12/96. (bmg) [Entry date 02/21/96] |
| 2/23/96 | 36 | ORDER as to Bruce F. Beaver denying [21-1] motion for hearing on bond status. (Signed by Magistrate Judge David A. Baker.) (bmg) [Entry date 02/23/96] |
| 2/23/96 | 37 | AMENDED ORDER as to Juan Garza denying [21-1] motion for bond status hearing as to Juan Garza. (Signed by Magistrate Judge David A. Baker.) (bmg) [Entry date 02/23/96] |
| 2/26/96 | 38 | CJA 20 as to Robin A. Gilliard: Appointment of Attorney Terry C. Christian; Voucher #0596989. (Signed by Deputy Clerk.) (bmg) [Entry date 02/26/96] |
| 2/28/96 | 39 | NOTICE OF HEARING: set arraignment for 11:00 3/7/96 for Enrique Garza, Juan Garza, and Robin A. Gilliard before Magistrate Judge David A. Baker. (bmg) [Entry date 02/28/96] |
| 2/29/96 | 40 | NOTICE of filing by Bruce F. Beaver. (bmg) [Entry date 03/01/96] |
| 2/29/96 | 41 | MOTION with memorandum in support by Bruce F. Beaver for discovery of statement of other charged and uncharged co-conspirators. Referred to Magistrate Judge David A. Baker. (bmg) [Entry date 03/01/96] |
| 2/29/96 | 42 | MOTION with memorandum in support by Bruce F. Beaver for disclosure of impeaching information and evidence favorable to defendant. Referred to Magistrate Judge David A. Baker. (bmg) [Entry date 03/01/96] |
| 2/29/96 | 43 | MOTION with memorandum in support by Bruce F. Beaver for Government agents to retain rough notes and writings. Referred to Magistrate Judge David A. Baker (bmg) [Entry date 03/01/96] |
| 2/29/96 | 44 | MOTION with memorandum in support by Bruce F. Beaver for production of impeachable convictions of prosecution witnesses. Referred to Magistrate Judge David A. Baker. (bmg) [Entry date 03/01/96] |
| 2/29/96 | 45 | MOTION with memorandum in support by Bruce F. Beaver to produce all statements of the defendant. Referred to Magistrate Judge David A. Baker. (bmg) [Entry date 03/01/96] |
| 2/29/96 | 46 | MOTION with memorandum in support by Bruce F. Beaver for production of Jencks Act statement and Grand Jury Minutes. Referred to Magistrate Judge David A. Baker. (bmg) [Entry date 03/01/96] |

Proceedings include all events.                                           APPEAL
6:96cr19-ALL   USA v. Garza, et al                              PRIOR  SL DOC
                                                                CLOSED DAB

2/29/96   47    MOTION with memorandum in support by Bruce F. Beaver for
                list of witnesses and witness statements.  Referred to
                Magistrate Judge David A. Baker. (bmg) [Entry date 03/01/96]

2/29/96   48    MOTION with memorandum in support by Bruce F. Beaver for
                inquiry of electronic surveillance.  Referred to
                Magistrate Judge David A. Baker. (bmg) [Entry date 03/01/96]

2/29/96   49    MOTION by Bruce F. Beaver for pre-trial production of
                Jencks Act material. Referred to Magistrate Judge David A.
                Baker. (bmg) [Entry date 03/01/96]

2/29/96   50    MOTION with memorandum in support by Bruce F. Beaver to
                require the Government to give notice of its intention to
                use certain evidence.  Referred to Magistrate Judge David
                A. Baker. (bmg) [Entry date 03/01/96]

2/29/96   51    MOTION by Bruce F. Beaver for bill of particulars.
                Referred to Magistrate Judge David A. Baker. (bmg)
                [Entry date 03/01/96]

2/29/96   52    MOTION with memorandum in support by Bruce F. Beaver
                pertaining to confidential informants. Referred to
                Magistrate Judge David A. Baker. (bmg) [Entry date 03/01/96]

2/29/96   53    MOTION with memorandum in support by Bruce F. Beaver to
                compel disclosure of existence and substance of promises of
                immunity, leniency or preferential treatment.  Referred to
                Magistrate Judge David A. Baker. (bmg) [Entry date 03/01/96]

2/29/96   54    MOTION with memorandum in support by Bruce F. Beaver for
                disclosure of Government's intent to rely on collateral
                acts.  Referred to Magistrate Judge David A. Baker. (bmg)
                [Entry date 03/01/96]

2/29/96   55    REQUEST by Bruce F. Beaver for discovery and inspection.
                Referred to Magistrate Judge David A. Baker. (bmg)
                [Entry date 03/01/96]

2/29/96   56    MOTION with memorandum in support by Bruce F. Beaver to
                adopt motions of co-defendants.  Referred to Magistrate
                Judge David A. Baker. (bmg) [Entry date 03/01/96]

2/29/96   57    MOTION by Bruce F. Beaver for extension of time for filing
                defense motions.  Referred to Magistrate Judge David A.
                Baker. (bmg) [Entry date 03/01/96] [Edit date 03/01/96]

2/29/96   58    MOTION by Bruce F. Beaver for severance.  Referred to
                Magistrate Judge David A. Baker. (bmg) [Entry date 03/01/96]

3/7/96    59    ARRAIGNMENT held on 3/7/96 as to Enrique Garza, Juan Garza,
                Robin A. Gilliard.  Defendants pled not guilty before
                Magistrate Judge David A. Baker.  Tape 96-19 (238/686). (bmg)

Docket as of November 6, 1996 2:19 pm                        Page 12

Proceedings include all events.                                          APPEAL
6:96cr19-ALL  USA v. Garza, et al                              PRIOR  SL DOC
                                                               CLOSED DAB
                    [Entry date 03/11/96]

3/7/96    --     ORAL MOTION in open court by <u>Robin A. Gilliard</u> to allow
                 defendant to reside with her new husband Jaime Beaver
                 (brother of co-defendant) instead of parents. (bmg)
                 [Entry date 03/11/96]

3/8/96    60     SCHEDULING ORDER as to Enrique Garza, Juan Garza, Robin A.
                 Gilliard setting discovery hearing for 10:00 4/1/96 before
                 Magistrate Judge David A. Baker.  (Signed 3/7/96 by
                 Magistrate Judge David A. Baker.) (bmg)
                 [Entry date 03/11/96]

3/8/96    60     SCHEDULING ORDER as to Enrique Garza, Juan Garza, Robin A.
                 Gilliard setting jury trial for 9:00 5/1/96 before Judge G.
                 K. Sharp.  (Signed 3/7/96 by Magistrate Judge David A.
                 Baker.) (bmg) [Entry date 03/11/96]

3/11/96   61     NOTICE of filing by Juan Garza. (bmg) [Entry date 03/11/96]

3/11/96   62     MOTION with memorandum in support by Juan Garza for
                 disclosure of electronic surveillance and fruits thereof.
                 Referred to Magistrate Judge David A. Baker. (bmg)
                 [Entry date 03/11/96]

3/11/96   63     MOTION with memorandum in support by Juan Garza for names
                 and addresses of witnesses and informants.  Referred to
                 Magistrate Judge David A. Baker. (bmg) [Entry date 03/11/96]

3/11/96   64     MOTION by Juan Garza for discovery.  Referred to
                 Magistrate Judge David A. Baker. (bmg) [Entry date 03/11/96]

3/11/96   65     MOTION with memorandum in support by Juan Garza for bill
                 of particulars.  Referred to Magistrate Judge David A.
                 Baker. (bmg) [Entry date 03/11/96]

3/11/96   66     MOTION with memorandum in support by Juan Garza for
                 production of statements of witnesses.  Referred to
                 Magistrate Judge David A. Baker. (bmg) [Entry date 03/11/96]

3/11/96   67     MOTION with memorandum in support by Juan Garza for
                 disclosure of Government's intent to rely on collateral
                 acts.  Referred to Magistrate Judge David A. Baker. (bmg)
                 [Entry date 03/11/96]

3/11/96   68     MOTION with memorandum in support by Juan Garza for
                 production of impeachable convictions of prosecution
                 witnesses. Referred to Magistrate Judge David A. Baker. (bmg)
                 [Entry date 03/11/96]

3/11/96   69     MOTION with memorandum in support by Juan Garza to produce
                 all statements of the defendant.  Referred to Magistrate
                 Judge David A. Baker. (bmg) [Entry date 03/11/96]

Proceedings include all events.                                    APPEAL
6:96cr19-ALL  USA v. Garza, et al                          PRIOR  SL DOC
                                                          CLOSED DAB

3/11/96  (70)    MOTION by Juan Garza for production of Brady, Giglio, and
                 Jencks Act material.  Referred to Magistrate Judge David
                 A. Baker. (bmg) [Entry date 03/11/96]

3/11/96  (71)    MOTION with memorandum in support by Juan Garza to compel
                 retention of investigating agents' notes.  Referred to
                 Magistrate Judge David A. Baker. (bmg) [Entry date 03/11/96]

3/11/96  (72)    MOTION with memorandum in support by Juan Garza requiring
                 Government to admit or deny the existence of other
                 investigation and potential indictments.  Referred to
                 Magistrate Judge David A. Baker. (bmg) [Entry date 03/11/96]

3/11/96  (73)    MOTION with memorandum in support by Juan Garza to compel
                 disclosure of existence and substance of promises of
                 immunity, leniency or preferential treatment.  Referred to
                 Magistrate Judge David A. Baker. (bmg) [Entry date 03/11/96]

3/11/96  (74)    MOTION with memorandum in support by Juan Garza for
                 statements of co-defendants.  Referred to Magistrate Judge
                 David A. Baker. (bmg) [Entry date 03/11/96]

3/11/96  (75)    MOTION by Juan Garza to designate evidence pursuant to
                 Fed.R.Crim.P. 12(d)(2).  Referred to Magistrate Judge
                 David A. Baker. (bmg) [Entry date 03/11/96]

3/11/96  (76)    MOTION with memorandum in support by Juan Garza to adopt
                 pleadings and motions of co-defendant. Referred to
                 Magistrate Judge David A. Baker. (bmg) [Entry date 03/11/96]

3/12/96  77      DISCOVERY ORDER as to Bruce F. Beaver denying [57-1] motion
                 for extension of time for filing defense motions; and
                 granting [56-1] motion to adopt motions of co-defendants.
                 (Signed by Magistrate Judge David A. Baker.) (bmg)
                 [Entry date 03/12/96]

3/13/96  (78)    MOTION with memorandum in support by Enrique Garza for
                 list of witnesses and witness statements.  Referred to
                 Magistrate Judge David A. Baker. (bmg) [Entry date 03/14/96]

3/13/96  (79)    MOTION with memorandum in support by Enrique Garza to
                 require the Government to give notice of its intention to
                 use certain evidence.  Referred to Magistrate Judge David
                 A. Baker. (bmg) [Entry date 03/14/96]

3/13/96  (80)    MOTION with memorandum in support by Enrique Garza for
                 disclosure of Government's intent to rely on collateral
                 acts.  Referred to Magistrate Judge David A. Baker. (bmg)
                 [Entry date 03/14/96]

3/13/96  (81)    MOTION with memorandum in support by Enrique Garza for
                 disclosure of impeaching information and evidence favorable
                 to defendant.  Referred to Magistrate Judge David A.
                 Baker. (bmg) [Entry date 03/14/96]

Proceedings include all events.                                    APPEAL
6:96cr19-ALL   USA v. Garza, et al                        PRIOR  SL DOC
                                                          CLOSED DAB

3/13/96  82    MOTION with memorandum in support by Enrique Garza for
               Government agents and attorneys to retain rough notes and
               writings.  Referred to Magistrate Judge David A. Baker. (bmg)
               [Entry date 03/14/96]

3/13/96  83    MOTION with memorandum in support by Enrique Garza for
               discovery of co-conspirators and co-conspirator's
               statements.  Referred to Magistrate Judge David A. Baker.
               (bmg) [Entry date 03/14/96]

3/13/96  84    MOTION with memorandum in support by Enrique Garza to
               compel disclosure of favorable evidence.  Referred to
               Magistrate Judge David A. Baker. (bmg) [Entry date 03/14/96]

3/13/96  85    MOTION with memorandum in support by Enrique Garza
               pertaining to confidential informants. Referred to
               Magistrate Judge David A. Baker. (bmg) [Entry date 03/14/96]

3/13/96  86    MOTION with memorandum in support by Enrique Garza for
               inquiry of electronic surveillance.  Referred to
               Magistrate Judge David A. Baker. (bmg) [Entry date 03/14/96]

3/13/96  87    MOTION with memorandum in support by Enrique Garza to
               compel disclosure of existence and substance of promises of
               immunity, leniency or preferential treatment.  Referred to
               Magistrate Judge David A. Baker. (bmg) [Entry date 03/14/96]

3/13/96  88    MOTION with memorandum in support by Enrique Garza for
               production and inspection of Grand Jury proceedings.
               Referred to Magistrate Judge David A. Baker. (bmg)
               [Entry date 03/14/96]

3/13/96  89    MOTION by Enrique Garza for pre-trial production of Jencks
               Act material. Referred to Magistrate Judge David A. Baker.
               (bmg) [Entry date 03/14/96]

3/13/96  90    MOTION with memorandum in support by Enrique Garza for
               production and disclosure of statements by co-defendants.
               Referred to Magistrate Judge David A. Baker. (bmg)
               [Entry date 03/14/96]

3/13/96  91    MOTION with memorandum in support by Enrique Garza for
               production of impeachable convictions of prosecution
               witnesses.  Referred to Magistrate Judge David A. Baker.
               (bmg) [Entry date 03/14/96]

3/13/96  92    REQUEST by Enrique Garza for discovery and inspection.
               Referred to Magistrate Judge David A. Baker. (bmg)
               [Entry date 03/14/96]

3/20/96  --    MOTION referred to Judge G. K. Sharp as to Bruce F. Beaver:
               [58-1] motion for severance. (bmg) [Entry date 03/20/96]

Proceedings include all events.
6:96cr19-ALL   USA v. Garza, et al

| | | |
|---|---|---|
| 3/20/96 | 93 | NOTICE OF HEARING: set change of plea hearing for 9:00 3/26/96 for Bruce F. Beaver before Judge G. K. Sharp. (bmg) [Entry date 03/20/96] |
| 3/25/96 | 94 | PLEA AGREEMENT as to Bruce F. Beaver. (bmg) [Entry date 03/25/96] |
| 3/26/96 | 95 | CHANGE OF PLEA Hearing before Judge G. K. Sharp.  Guilty Plea Proffered and Accepted as to Bruce F. Beaver -- Count 2.  Court Reporter: Anthony Rolland. (bmg) [Entry date 03/26/96] |
| 3/26/96 | 96 | NOTICE OF HEARING: set sentencing for 9:00 6/19/96 for Bruce F. Beaver before Judge G. K. Sharp. (bmg) [Entry date 03/26/96] |
| 3/29/96 | 97 | STIPULATION for substitution of counsel and co-counsel as to Enrique Garza. (bmg) [Entry date 03/29/96] |
| 3/29/96 | 98 | ORDER as to Robin A. Gilliard canceling discovery motion hearing scheduled for 4/1/96 at 10:00 A.M. (Signed by Magistrate Judge David A. Baker.) (bmg) [Entry date 03/29/96] |
| 3/29/96 | 99 | MOTION by counsel (Clarence W. Counts) for Enrique Garza to withdraw. (bmg) [Entry date 04/01/96] [Edit date 04/25/96] |
| 4/1/96 | 100 | DISCOVERY MOTION HEARING held on 4/1/96 before Magistrate Judge David A. Baker as to Enrique Garza and Juan Garza. Tape 96-27 (4/179). (bmg) [Entry date 04/01/96] |
| 4/3/96 | 101 | ORDER TO SHOW CAUSE as to Enrique Garza.  Counsel shall show cause within 11 days from the date of this Order why sanctions should not be imposed for failure to be present at discovery hearing 4/1/96.  (Signed by Magistrate Judge David A. Baker.) (bmg) [Entry date 04/03/96] |
| 4/10/96 | 102 | ORDER setting date for trial as to Enrique Garza, Juan Garza, and Robin A. Gilliard.  The Court will set a date for trial to begin IMMEDIATELY FOLLOWING USA v. Beltran, et al. (95-223-CR-ORL-22) set for date certain of 04-29-96 by the Honorable Anne C. Conway.  If for some reason that case is continued, this matter will be set for time certain to commence 05/01/96 at 9:00 a.m. (Signed by Judge G. K. Sharp.) (nrs) [Entry date 04/10/96] |
| 4/15/96 | 103 | RESPONSE on order to show cause [101-1] by Enrique Garza. (bmg) [Entry date 04/16/96] |
| 4/15/96 | 104 | MOTION by Enrique Garza for reconsideration of bond. Referred to Magistrate Judge David A. Baker. (bmg) [Entry date 04/16/96] |

Proceedings include all events.                                        APPEAL
6:96cr19-ALL   USA v. Garza, et al                          PRIOR   SL DOC
                                                            CLOSED  DAB

4/15/96  (105)   MOTION by Enrique Garza for protection from trial. (bmg)
                 [Entry date 04/16/96]

4/18/96  (106)   ORDER as to Enrique Garza denying [104-1] motion for
                 reconsideration of bond; as to the Order to Show Cause
                 (#101) and the Response (#103), counsel are admonished that
                 they are responsible for determining all previously set
                 matters when they elect to appear in a case already in
                 progress.   The Order to Show Cause is discharged other than
                 this admonishment. (Signed by Magistrate Judge David A.
                 Baker.) (bmg) [Entry date 04/18/96]

4/22/96  --      ENDORSED ORDER as to Enrique Garza granting [99-1] motion
                 to withdraw.  (Signed by Judge G. K. Sharp.) (bmg)
                 [Entry date 04/22/96]

4/22/96  (107)   Information to establish and provide notice of defendant's
                 prior conviction for purposes of sentencing enhancement
                 pursuant to 21 U.S.C. 851 by USA as to Enrique Garza. (bmg)
                 [Entry date 04/22/96]

4/22/96  (108)   Information to establish and provide notice of defendant's
                 prior conviction for purposes of sentencing enhancement
                 pursuant to 21 U.S.C. 851 by USA as to Juan Garza. (bmg)
                 [Entry date 04/22/96]

4/23/96  109     MOTION by Robin A. Gilliard for substitution of counsel.
                 (bmg) [Entry date 04/24/96]

4/23/96  110     NOTICE of appearance for Robin A. Gilliard by attorney
                 Kelley W. Collier. (bmg) [Entry date 04/24/96]

4/25/96  111     MOTION with memorandum in support as to Robin A. Gilliard
                 to withdraw as counsel of record. (bmg)
                 [Entry date 04/25/96]

4/30/96  112     PLEA AGREEMENT as to Robin A. Gilliard. (bmg)
                 [Entry date 04/30/96]

4/30/96  113     CHANGE OF PLEA Hearing before Judge G. K. Sharp.  Guilty
                 Plea Proffered and Accepted as to Robin A. Gilliard --
                 Count 7.  Court Reporter: Anthony Rolland. (bmg)
                 [Entry date 04/30/96]

4/30/96  114     NOTICE OF HEARING: set sentencing for 9:00 7/17/96 for
                 Robin A. Gilliard before Judge G. K. Sharp. (bmg)
                 [Entry date 04/30/96]

4/30/96  (115)   PROPOSED JURY INSTRUCTIONS by USA. (bmg)
                 [Entry date 04/30/96]

4/30/96  --      SEALED DOCUMENT S- 1 (bmg) [Entry date 04/30/96]

4/30/96  --      SEALED DOCUMENT S- 2 (bmg) [Entry date 04/30/96]

```
Proceedings include all events.                              APPEAL
6:96cr19-ALL   USA v. Garza, et al                    PRIOR  SL DOC
                                                      CLOSED DAB
```

4/30/96   --       SEALED DOCUMENT S- 3 (bmg) [Entry date 04/30/96]

4/30/96   --       SEALED DOCUMENT S- 4 (bmg) [Entry date 04/30/96]

5/1/96   (116)     PROPOSED WITNESS LIST by USA as to Enrique Garza, Juan
                   Garza. (bmg) [Entry date 05/01/96]

5/1/96   (117)     JURY TRIAL (1ST DAY) before Judge G. K. Sharp as to Enrique
                   Garza and Juan Garza.  Court Reporter: Anthony Rolland. (bmg)
                   [Entry date 05/02/96]

5/2/96   (118)     JURY TRIAL (2ND DAY) before Judge G. K. Sharp as to Enrique
                   Garza and Juan Garza held on 5/2/96.  Court Reporter:
                   Anthony Rolland. (bmg) [Entry date 05/06/96]

5/2/96   --        ORAL MOTION in open court by Enrique Garza and Juan Garza
                   for Judgment of Acquittal. (bmg) [Entry date 05/06/96]

5/2/96   --        ORAL ORDER as to Enrique Garza granting as to Counts (3) and
                   (5) denying [0-0] oral motion for Judgment of Acquittal as
                   to Counts 1,4,6,7; as to Juan Garza denying [0-0] oral
                   motion for Judgment of Acquittal. (Entered by Judge G. K.
                   Sharp.) (bmg) [Entry date 05/06/96]

5/2/96   (119)     Copy of Indictment given to jury as to Enrique Garza, Juan
                   Garza. (bmg) [Entry date 05/06/96]

5/2/96   (120)     COURT'S INSTRUCTIONS TO THE JURY as to Enrique Garza, Juan
                   Garza. (bmg) [Entry date 05/06/96]

5/2/96   (121)     EXHIBIT LIST by USA as to Enrique Garza, Juan Garza. (bmg)
                   [Entry date 05/06/96]

5/2/96   (122)     JURY VERDICT of Guilty: Enrique Garza -- Counts 1, 6, 7;
                   Not Guilty: Enrique Garza -- Count 4. (bmg)
                   [Entry date 05/06/96]

5/2/96   (123)     JURY VERDICT of Guilty: Juan Garza -- Counts 1, 6, 7. (bmg)
                   [Entry date 05/06/96]

5/2/96   (124)     NOTICE OF HEARING: set sentencing for 9:00 7/17/96 for
                   Enrique Garza and Juan Garza before Judge G. K. Sharp. (bmg)
                   [Entry date 05/06/96]

5/6/96   --        Update disposition information as to Enrique Garza --
                   Counts 3, 4, 5.  JURY VERDICT OF NOT GUILTY ON 5/2/96 AS TO
                   COUNT (4) JUDGMENT OF ACQUITTAL ON 5/2/96 AS TO COUNTS (3) AND
                   (5) (bmg) [Entry date 05/06/96]

5/6/96   --        ENDORSED ORDER as to Robin A. Gilliard granting [111-1]
                   motion to withdraw as counsel of record. (Signed 5/1/96 by
                   Judge G. K. Sharp.) (bmg) [Entry date 05/06/96]

```
Proceedings include all events.                           APPEAL
6:96cr19-ALL  USA v. Garza, et al              PRIOR  SL DOC
                                               CLOSED DAB
```

5/8/96    (125)    MOTION by Juan Garza for new trial. (bmg)
                   [Entry date 05/08/96]

5/8/96    (126)    MOTION by Juan Garza for Judgment of Acquittal. (bmg)
                   [Entry date 05/08/96]

5/30/96   --       ENDORSED ORDER as to Juan Garza denying [125-1] motion for
                   new trial.  (Signed by Judge G. K. Sharp.) (bmg)
                   [Entry date 05/30/96]

5/30/96   --       ENDORSED ORDER as to Juan Garza denying [126-1] motion for
                   Judgment of Acquittal.  (Signed by Judge G. K. Sharp.) (bmg)
                   [Entry date 05/30/96]

6/14/96   127      MOTION by USA requesting the Court to recognize
                   defendant's substantial assistance as to Bruce F. Beaver.
                   (bmg) [Entry date 06/14/96]

6/18/96   128      RESPONSE by USA as to Bruce F. Beaver in opposition to
                   defendant's motion to continue sentencing. (bmg)
                   [Entry date 06/18/96]

6/19/96   129      SENTENCING before Judge G. K. Sharp as to Bruce F. Beaver:
                   Count 2 -- 120 months imprisonment; 5 years supervised
                   release; $50.00 special assessment.  Count 1 disposed:
                   DISMISSED ON MOTION BY GOVERNMENT.  The defendant is
                   remanded to the custody of the U.S. marshal.  Court
                   Reporter: Anthony Rolland. (bmg) [Entry date 06/20/96]

6/19/96   --       ORAL MOTION in open court by Bruce F. Beaver to continue
                   sentencing and substitute counsel. (bmg)
                   [Entry date 06/20/96]

6/19/96   --       ORAL ORDER as to Bruce F. Beaver denying [0-0] oral motion
                   to continue sentencing and substitute counsel. (Entered by
                   Judge G. K. Sharp.) (bmg) [Entry date 06/20/96]

6/19/96   --       ORAL ORDER as to Bruce F. Beaver granting [127-1] motion
                   requesting the Court to recognize defendant's substantial
                   assistance.  (Entered by Judge G. K. Sharp.) (bmg)
                   [Entry date 06/20/96]

6/20/96   130      JUDGMENT as to Bruce F. Beaver.  (Signed 6/19/96 by Judge
                   G. K. Sharp.)  MFR 91/0363. (bmg) [Entry date 06/20/96]

7/5/96    131      MOTION by Robin A. Gilliard to continue sentencing
                   7/17/96. (bmg) [Entry date 07/05/96]

7/8/96    --       ENDORSED ORDER as to Robin A. Gilliard denying [131-1]
                   motion to continue sentencing 7/17/96.  Defendant will not
                   be incarcerated prior to surgery. (Signed by Judge G. K.
                   Sharp.) (nrs) [Entry date 07/08/96]

Proceedings include all events.                                    APPEAL
6:96cr19-ALL  USA v. Garza, et al                          PRIOR  SL DOC
                                                           CLOSED DAB

7/17/96  (132)   MINUTE ENTRY as to Juan Garza:  Counsel failed to appear
                 for sentencing before Judge G. K. Sharp.  Sentencing set
                 for 7/18/96 at 9:00 A.M.  Marshal to see that both
                 defendant and counsel shall be present. Court Reporter:
                 Ninette Hernandez (Realtime). (bmg) [Entry date 07/18/96]

7/17/96     SENTENCING before Judge G. K. Sharp as to Robin A.
                 Gilliard -- Count 7:  5 years probation (6 months home
                 detention); $50.00 special assessment; $3,000.00 fine,
                 Count 1 -- DISMISSED ON MOTION BY GOVERNMENT  Court
                 Reporter: Ninette Hernandez (Realtime). (bmg)
                 [Entry date 07/18/96]

7/17/96  (134)   SENTENCING before Judge G. K. Sharp as to Enrique Garza --
                 Counts 1, 6, 7:  480 months imprisonment; 10 years
                 supervised release; $150.00 special assessment    Counts
                 disposed: JURY VERDICT OF NOT GUILTY ON 5/2/96 AS TO COUNT
                 4; JUDGMENT OF ACQUITTAL ON 5/2/96 AS TO COUNTS 3 AND 5.
                 The defendant is remanded to the custody of the U.S.
                 marshal.  Court Reporter: Ninette Hernandez (Realtime). (bmg)
                 [Entry date 07/18/96]

7/17/96  (135)   EXHIBIT LIST by USA. (bmg) [Entry date 07/18/96]

7/18/96  (136)   SENTENCING before Judge G. K. Sharp as to Juan Garza --
                 Counts 1, 6, 7:  360 months imprisonment; 10 years
                 supervised release; $150.00 special assessment.  Attorney
                 Luis Davila failed to appear 7/17/96 - Court assessed costs
                 $108.00.  The defendant is remanded to the custody of the
                 U.S. marshal.  Court Reporter: Ninette Hernandez
                 (Realtime). (bmg) [Entry date 07/18/96]

7/18/96  137     JUDGMENT as to Robin A. Gilliard.  (Signed by Judge G. K.
                 Sharp.)  MFR 91/0867. (bmg) [Entry date 07/18/96]

7/18/96  (138)   JUDGMENT as to Juan Garza.  (Signed by Judge G. K. Sharp.)
                 MFR 91/0891. (bmg) [Entry date 07/18/96]

7/18/96  (139)   JUDGMENT as to Enrique Garza.  (Signed by Judge G. K.
                 Sharp.)  MFR 91/0871. (bmg) [Entry date 07/18/96]

7/19/96  (140)   NOTICE OF APPEAL appealing [139-1] judgment order entered
                 7/18/96 as to Enrique Garza.  Certificate of Readiness due
                 on 8/5/96. (bmg) [Entry date 07/22/96]

7/22/96  (141)   TRANSMITTAL of initial appeal package to USCA consisting of
                 certified copies of notice of appeal, docket report, and
                 Judgment being appealed as to Enrique Garza re: [140-1]
                 appeal.  Appeal information sheet sent to counsel, notice
                 sent to probation. (bmg) [Entry date 07/22/96]

7/22/96  142     CORRECTED JUDGMENT as to Robin A. Gilliard.  Judgment
                 corrected to change the fine range in the statement of
                 reasons.  (Signed by Judge G. K. Sharp.)  MFR 91/0966. (bmg,

Proceedings include all events.                                         APPEAL
6:96cr19-ALL  USA v. Garza, et al                            PRIOR  SL DOC
                                                             CLOSED DAB

8/29/96   153    TRANSMITTAL of initial appeal package to USCA consisting of
                 certified copies of notice of appeal, docket report, and
                 Judgment being appealed as to Enrique Garza, Juan Garza,
                 Robin A. Gilliard re: [150-1] appeal.  Appeal information
                 sheet sent to counsel, notice sent to probation. (bmg)
                 [Entry date 08/29/96]

8/30/96   154    Acknowledgment of receipt by USCA re filing fee paid as to
                 Enrique Garza. (bmg) [Entry date 09/04/96]

9/12/96   155    APPEAL INFORMATION SHEET as to Juan Garza Transcript due
                 9/27/96 for Juan Garza [143-1] appeal (rdo)
                 [Entry date 09/12/96]

9/12/96   156    TRANSCRIPT filed as to Enrique Garza  for pretrial hearing   VOL
                 held April 30, 1996 before Judge G. Kendall Sharp
                 (Transcripts filed in separate folder.) (rdo)
                 [Entry date 09/12/96]

9/12/96   157    TRANSCRIPT filed as to Enrique Garza, Juan Garza  for
                 pretrial hearing  held May 1, 1996 before Judge G.          VO
                 Kendall Sharp  (Transcripts filed in separate folder.) (rdo)
                 [Entry date 09/12/96]

9/12/96   158    TRANSCRIPT filed as to Enrique Garza, Juan Garza  for trial  VOL
                 held May 1, 1996 before Judge G. Kendall Sharp
                 (Transcripts filed in separate folder.) (rdo)
                 [Entry date 09/12/96]

9/12/96   159    TRANSCRIPT filed as to Enrique Garza, Juan Garza  for trial  VOL
                 held May 2, 1996 before Judge G. Kendall Sharp              5
                 (Transcripts filed in separate folder.) (rdo)
                 [Entry date 09/12/96]

9/12/96   160    TRANSCRIPT filed as to Juan Garza  for sentencing           VOL
                 proceedings held July 18, 1996 before Judge G. Kendall
                 Sharp  (Transcripts filed in separate folder.) (rdo)
                 [Entry date 09/12/96]

9/13/96   161    NOTICE of Docketing ROA from USCA as to Enrique Garza, Juan
                 Garza Re: [150-1] appeal  USCA Number: 96-3050 (rdo)
                 [Entry date 09/16/96]

9/13/96   162    NOTICE of Docketing ROA from USCA as to Robin A. Gilliard
                 Re: [150-1] appeal  USCA Number: 96-3213 (rdo)
                 [Entry date 09/19/96]

9/19/96   163    RETURN of judgment executed as to Enrique Garza on 9/3/96
                 at USP, Lewisburg, PA. (bmg) [Entry date 09/20/96]

9/24/96   164    CJA 24 as to Juan Garza  Authorization to pay Anthony
                 Rolland $ 921.00 for transcript  Voucher # 1861210488 (
                 Signed by Judge G. K. Sharp ) (rdo) [Entry date 09/24/96]

```
Proceedings include all events.                                    APPEAL
6:96cr19-ALL   USA v. Garza, et al                      PRIOR  SL DOC
                                                        CLOSED DAB
```

10/10/96 165    CERTIFICATE OF READINESS ( [162-1] record on appeal) with
                certified copies of indexed District Court docket sheet as
                to Robin A. Gilliard sent to USCA (ROA will consist of: 1
                PSI, 1 vol. pleadings; 1 vol. transcript.) (rdo)
                [Entry date 10/10/96]

10/10/96 166    Transmittal letter sent to USCA regarding certificate of
                readiness. (rdo) [Entry date 10/23/96]

10/23/96 167    Acknowledgement of receipt of Certificate of Readiness sent
                back from USCA. (rdo) [Entry date 10/24/96]

04/11/98   15:51   ☎407 648 8085          FBD ORLANDO

COPY                    GJ # 95-1-81

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    No. 96-19-CR-ORL-18

ENRIQUE GARZA                         21 U.S.C. § 846
  a/k/a "Henry"                       21 U.S.C. § 841(a)(1)
JUAN GARZA                            21 U.S.C. § 853 - Forfeitures
  a/k/a "Johnny"
BRUCE F. BEAVER                       I, III, IV, V, VI + VII
ROBIN A. GILLIARD

The Grand Jury charges:

<u>COUNT ONE</u>

Beginning on or about September 15, 1994, and continuing through on or about

February 2, 1996, in Orange County, Florida, in the Middle District of Florida, and

elsewhere,

4 people

ENRIQUE GARZA
  a/k/a "Henry"
JUAN GARZA
  a/k/a "Johnny"
BRUCE F. BEAVER          — OUT
and
ROBIN A. GILLIARD        — OUT

the defendants herein, did knowingly, willfully and intentionally combine, conspire,

confederate and agree together and with each other and other persons both known and

unknown to the Grand Jury, to possess with intent to distribute a quantity of a mixture and

substance containing a detectable amount of methamphetamine, a controlled substance listed

158.

in Schedule I of Title 21, United States Code, Section 812, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 846.

### COUNT TWO

From on or about September 15, 1994, continuing through on or about September 19, 1994, in Orange County, Florida, in the Middle District of Florida,

### BRUCE F. BEAVER

the defendant herein, did knowingly, intentionally, and unlawfully possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of methamphetamine, a controlled substance listed in Schedule I of Title 21, United States Code, Section 812.

All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

### COUNT THREE

On or about May 1, 1995, in Orange County, Florida, in the Middle District of Florida,

### ENRIQUE GARZA
### a/k/a "Henry"

the defendant herein, did knowingly, intentionally, and unlawfully possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of methamphetamine, a controlled substance listed in Schedule I of Title 21, United States Code, Section 812.

2

All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT FOUR

On or about June 1, 1995, in Orange County, Florida, in the Middle District of Florida,

### ENRIQUE GARZA
#### a/k/a "Henry"

the defendant herein, did knowingly, intentionally, and unlawfully possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of methamphetamine, a controlled substance listed in Schedule I of Title 21, United States Code, Section 812.

All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT FIVE

On or about July 1, 1995, in Orange County, Florida, in the Middle District of Florida,

### ENRIQUE GARZA
#### a/k/a "Henry"

the defendant herein, did knowingly, intentionally, and unlawfully possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of methamphetamine, a controlled substance listed in Schedule I of Title 21, United States Code, Section 812.

3

All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT SIX

On or about August 1, 1995, in Orange County, Florida, in the Middle District of Florida,

**ENRIQUE GARZA**
a/k/a "Henry"
and
**JUAN GARZA**
a/k/a "Johnny"

the defendants herein, did knowingly, intentionally, and unlawfully possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of methamphetamine, a controlled substance listed in Schedule I of Title 21, United States Code, Section 812.

All in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT SEVEN

From on or about January 1, 1996, continuing through on or about February 2, 1996, in Orange County, Florida, in the Middle District of Florida,

**ENRIQUE GARZA**
a/k/a "Henry"
**JUAN GARZA**
a/k/a "Johnny"
and
**ROBIN A. GILLIARD**

the defendants herein, did knowingly, intentionally, and unlawfully attempt to possess with intent to distribute a quantity of a mixture and substance containing a detectable amount of

4

methamphetamine, a controlled substance listed in Schedule I of Title 21, United States Code, Section 812.

All in violation of Title 21, United States Code, Section 846.

## FORFEITURES

1.     The allegations contained in Counts One through Seven, inclusive of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures, pursuant to the provisions of Title 21, United States Code, Section 853.

2.     From his engagement in violations alleged in Counts One through Seven, inclusive of this Indictment, each punishable by imprisonment for more than one year, the defendants,

**ENRIQUE GARZA**
a/k/a "Henry"
**JUAN GARZA**
a/k/a "Johnny"
and
**ROBIN A. GILLIARD**

shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a)(1) and (2), all of his right, title and interest in:

    a.     Property constituting and derived from any proceeds the defendants obtained, directly or indirectly, as a result of such violations;

    b.     Property used and intended to be used in any manner or part to commit and to facilitate the commission of such violations.

3.     If any of the property described above, as a result of any act or omission of the defendants:

    a.     cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property, which cannot be divided

without difficulty,

the United States of America shall be entitled to, and shall pursue, forfeiture of substitute

property under the provisions of Title 21, United States Code, Section 853(p).

A TRUE BILL,

_____
FOREMAN

CHARLES R. WILSON
United States Attorney


By _____
Kendell W. Wherry
Assistant United States Attorney


By _____
Rick L. Jancha
Managing Assistant U.S. Attorney

4

1    SPECIFIC OBJECTIONS TO THE PSI?

2          THE COURT:  YES, SIR.

3          MR. EDMUND:  YOUR HONOR, AS TO PAGE 2 OF PSI, AS

4    TO PARAGRAPH 10 -- AND I DON'T HAVE A TRANSCRIPT AND

5    DON'T FEEL AT THIS TIME THAT I CAN OFFER PROOF;

6    ALTHOUGH, I'LL SAY TO THE COURT THAT THE ULTIMATE

7    PURCHASE WAS $6,000.  THAT GOES TO PARAGRAPHS 11, TO

8    WHICH WE OBJECTED, IF IT PLEASE YOUR HONOR, AND TO

9    PARAGRAPH 12.  IF IT PLEASE YOUR HONOR, THAT WOULD BE

10   ON PAGE 3.

11          THE COURT:  ALL RIGHT.

12               ANY RESPONSE BY THE GOVERNMENT?

13          MR. WHERRY:  OUR POSITION, YOUR HONOR, WOULD BE

14   THAT IN REGARD TO THE EVIDENCE IN THE CASE, THERE WAS

15   TESTIMONY THAT THE DEFENDANT WAS DEALING AND ALSO

16   PURCHASING QUANTITIES OF METHAMPHETAMINE THAT EXCEEDED

17   THE AMOUNT AS DEFENDANT IS OBJECTING TO, AND WE WOULD

18   SUGGEST TO THE COURT THAT THE TESTIMONY AND THE RECORD

19   IN THE TRIAL IS WHAT WE WOULD HAVE TO RELY UPON.  AND I

20   WOULD SUGGEST THAT THIS PARTICULAR OBJECTION IS NOTED

21   IN THE RECORD AND --

22          THE COURT:  ALL RIGHT.

23               BASED ON THE COURT'S RECOLLECTION AND THE

24   TESTIMONY AT TRIAL AND THE RECORDED CONVERSATIONS BY

25   THE AGENTS, THE COURT FINDS THAT PARAGRAPHS 10 AND 11

1   AND 12 ARE A CORRECT ASSESSMENT AS STATED BY THE AGENTS

2   IN THIS CASE.

3       MR. EDMUND:  THANK YOU, YOUR HONOR.

4        ON PAGE 3, YOUR HONOR, PARAGRAPH 15, I

5   SUGGEST THAT PARAGRAPH -- THE CONTENTS OF PARAGRAPH 15

6   WILL NOT BE CORROBORATED BY TRIAL TESTIMONY AS I RECALL

7   THE TRIAL TESTIMONY.  AND MAKE MY OBJECTION TO

8   PARAGRAPH 15 ON THOSE GROUNDS, IF IT PLEASE THE COURT.

9        I SUGGEST TO YOUR HONOR THAT THE TESTIMONY

10   AT TRIAL INDICATED WITH SOME DEGREE OF SPECIFICITY OF A

11   POUND AND, I THINK, SIX OUNCES HAVING BEEN PURCHASED BY

12   GARZA WITH VAGUE INNUENDOES OR STATEMENTS CONCERNING

13   POSSIBLE PRIOR PURCHASES BUT NOT SPECIFIC AMOUNTS, IF

14   IT PLEASE THE COURT.

15        AND MAKE THE OBJECTION TO 15 -- TO PARAGRAPH

16   15 ON THOSE GROUNDS, IF IT PLEASE THE COURT.

17       THE COURT:  THE COURT RECALLS FROM THE TESTIMONY

18   THAT HIS PARTICIPATION FAR EXCEEDED A POUND AND THE

19   CONTENTS OF PARAGRAPH 15 ARE CORRECT, AS THE COURT

20   RECALLS.

21       MR. EDMUND:  AGAIN ON PAGE 3, YOUR HONOR,

22   PARAGRAPH 16, IF I MIGHT CALL YOUR HONOR'S ATTENTION TO

23   THE TESTIMONY OF MR. GINNITY.

24        MR. GINNITY INDICATED THAT MR. GARZA HAD

25   BEEN IN HIS PRESENCE ONLY TWICE WITH A FEMALE.  AND

1    THAT DID NOT INCLUDE MS. PEAVY.  BUT MORE IMPORTANTLY,

2    IT'S MY RECOLLECTION THAT THE JURY RETURNED A VERDICT

3    OF NOT GUILTY AS TO COUNTS WHEREIN REFERENCES WERE MADE

4    IN REFERENCE TO MS. PEAVY.

5            SO I WOULD OBJECT TO PARAGRAPH 16, AS IT

6    RELATES TO THE POSSESSION OF THE FIREARM BECAUSE IT HAD

7    NOT BEEN INCLUDED IN THE TRIAL TESTIMONY, IF IT PLEASE

8    YOUR HONOR, AS IT RELATES TO THE USE OR ATTEMPTED USE

9    OF A MINOR OR JUVENILE IN THE PARTICIPATION OF A

10   CRIMINAL ACT.

11           THE COURT:  ANY RESPONSE BY THE GOVERNMENT?

12           MR. WHERRY:  MS. PEAVY, ONE OF THE GOVERNMENT'S

13   WITNESSES WHO WAS -- I THINK THE RECORD WILL REFLECT

14   WAS IN FACT A JUVENILE AT THE TIME OF THIS EPISODE,

15   INDICATED SHE HAD TRAVELED WITH MR. HENRY GARZA.

16   WHETHER SHE IN FACT PARTICIPATED IN THE ACTUAL

17   TRANSACTIONS OF ANY BUYS AND SELLS BETWEEN MR. GARZA

18   AND GINNITY, I THINK THE RECORD MIGHT HAVE BEEN A

19   LITTLE THIN IN THAT REGARD.  BUT THERE WAS EVIDENCE

20   THAT SHE WAS A COMPANION WITH MR. HENRY GARZA DURING

21   THIS EPISODE OF HIS BUYING AND DEALING IN

22   METHAMPHETAMINE WITH MR. GINNITY.

23           THE COURT:  PARAGRAPH 16 WILL BE STRICKEN.

24           MR. EDMUND:  THANK YOU, YOUR HONOR.

25               IF IT PLEASE THE COURT AGAIN ON PAGE 4,

1   PARAGRAPH 20.  AND I MAKE THE OBJECTION TO PARAGRAPH 20

2   EVEN THOUGH IT DOESN'T SEEM TO HAVE ANY EFFECT UPON THE

3   ULTIMATE TOTAL SCORE SHEET, YOUR HONOR, BUT IT IS A

4   MATTER TO WHICH I MUST MAKE MY OBJECTION AND DO THAT ON

5   THE GROUNDS IT IS NOT SUPPORTED BY ANY OF THE EVIDENCE

6   THAT WAS ELICITED AT THE TIME OF THE TRIAL.

7        THE COURT:  MR. WHERRY, ANYTHING YOU'D LIKE TO

8   SAY?

9        MR. WHERRY:  MY RECORD -- I THINK THE RECORD WILL

10  REFLECT THAT MS. GILLIARD DID INDICATE THAT SHE HAD

11  TRAVELED THROUGH THE ORLANDO AREA FOR THE PURPOSES OF

12  ASSISTING AND BUYING AND WITH MONEY PROVIDED BY

13  MR. GARZA TO PURCHASE METHAMPHETAMINE FROM MR. GINNITY

14  AND BRING IT BACK TO THE HARDEE COUNTY AREA FOR

15  MR. HENRY GARZA IN WHATEVER USE HE WAS GOING TO MAKE OF

16  THE METHAMPHETAMINE.

17       MR. EDMUND:  IF THAT'S YOUR HONOR'S RECOLLECTION,

18  I UNDERSTAND, SIR, SINCE MY NOTES AND RECOLLECTION DO

19  NOT CONFORM TO THAT OF MR. WHERRY.

20       THE COURT:  I WILL ORDER THAT THE FIRST SENTENCE

21  OF PARAGRAPH 20 BE STRICKEN.  THE REST THE COURT

22  RECALLS IS TRUE, BUT I DON'T RECALL THAT ROBIN GILLIARD

23  IS IN ANY POSITION TO ACTUALLY BEING A SELLER.

24       MR. EDMUND:  THANK YOU, YOUR HONOR.

25            AS TO PAGE 5, YOUR HONOR, OBJECTIONS TO

1    PARAGRAPH 21.

2         YOUR HONOR, GOING THROUGH ALL OF THE TRIAL

3    TESTIMONY AND TRYING TO COME TO A CONCLUSION AS TO WHAT

4    WAS PROVEN, IF MR. GARZA HAD BEEN DIRECTLY CONNECTED

5    WITH -- THERE'S REFERENCE TO $60,000 THAT WOULD GO

6    BACK, IF IT PLEASE YOUR HONOR, TO PARAGRAPH 15 BY

7    MS. NICHOLS.  I SUGGEST THAT THE CREDIBILITY OF

8    MS. NICHOLS IS HIGHLY QUESTIONABLE, BUT MORE

9    IMPORTANTLY, SHE WAS AWARE OF SPECIFICALLY ONLY ONE

10   POUND PURCHASED.  ALTHOUGH, SHE ALLUDES TO AN

11   ADDITIONAL $40,000 BEING PAID FOR PRIOR PURCHASES.

12        I DON'T RECALL THIS BEING IN ANY WAY

13   CONFIRMED BY THE TESTIMONY OF MR. GINNITY.  AGAIN, SIR,

14   THE TRIAL TESTIMONY -- I MEAN, THE TRIAL TRANSCRIPT

15   WILL CORRECTLY STATE WHAT IT WAS HE SAID, BUT I DON'T

16   RECALL THAT.  I RECALL SOME VAGUE REFERENCES TO OTHER

17   -- TO OTHER TRANSACTIONS BUT NOT ANYTHING SPECIFIC, IF

18   IT PLEASE THE COURT.

19        AND AS OPPOSED TO STARTING OUT AT A LEVEL

20   28, WHICH WOULD BE THE 40 POUNDS OR 18.14 KILOGRAMS, I

21   BELIEVE THAT THE AMOUNT PROVEN IS MORE LIKELY TO BE THE

22   400 TO 700 GRAMS THAT I REFERRED TO IN MY RESPONSE TO

23   THE -- AND THE ADDENDUM -- WHICH IS SET FORTH IN THE

24   ADDENDUM, THAT THE PROBATION OFFICER FILED PURSUANT TO

25   MY RESPONSE.

1           AND IF I MIGHT, WHILE I'M ON THAT PARAGRAPH

2    27, I SUGGEST TO THE COURT THAT THE -- HE FALLS WITHIN

3    LEVEL 28, AS OPPOSED TO A LEVEL 36, BASED UPON THE

4    TOTAL WEIGHT THAT I THINK WAS PROVEN WITH SOME DEGREE

5    OF SPECIFICITY DURING THE TRIAL.

6           NOW, SOMETIMES PEOPLE SAY I LOOK LIKE A

7    HIPPIE, BUT I CALL LAW ENFORCEMENT WHEN I GET IN

8    TROUBLE AND I HAVE A GREAT DEAL OF RESPECT FOR THEM.

9    BUT I DO BELIEVE THAT LAW ENFORCEMENT OFFICERS DURING A

10   COURSE OF AN INVESTIGATION CAN BE MISLED BY PEOPLE WITH

11   WHOM THEY'RE CONVERSING.  AND I THINK THE PROBATION

12   OFFICER HAS THE PERFECT RIGHT TO RELY UPON TESTIMONY OR

13   STATEMENTS MADE BY THE INVESTIGATING OFFICERS IN THE

14   CASE.  BUT WHEN A CASE GOES TO TRIAL, MORE OFTEN THAN

15   NOT, THERE ARE PLEAS IN DRUG CASES.  MORE OFTEN THAN

16   NOT THEY'VE GOT SPECIFIC TESTIMONY CONCERNING AMOUNTS

17   IN DRUG CASES WHEN IT COMES TO SENTENCING BEFORE THE

18   COURT.

19         BUT THIS CASE IS A LITTLE DIFFERENT IN THAT

20   IT WENT TO TRIAL.  AND I THINK THAT THE TRIAL TESTIMONY

21   SHOULD BE USED AS OPPOSED TO WHAT PEOPLE HAVE SAID --

22   PERHAPS UNDER OATH, PERHAPS NOT UNDER OATH, AND

23   PROBABLY NOT UNDER OATH -- TO THE INVESTIGATING

24   OFFICERS DURING THE COURSE OF THE INVESTIGATION,

25   PARTICULARLY SINCE PROBABLY ALL OF IT WOULD COME FROM

1    PEOPLE WHO ARE LOOKING FOR A 5K1 OR ULTIMATELY FOR A

2    LEVEL 30 THROUGH 35, IF IT PLEASE YOUR HONOR.

3          I DON'T KNOW WHAT SPECIFIC EFFECT YOUR

4    FINDING AN ENTRY LEVEL OF 28 WOULD HAVE ON YOUR

5    ULTIMATE SENTENCE BECAUSE THE NOTICE OF ENHANCEMENT WAS

6    FILED BY THE GOVERNMENT.

7          BUT IN THE EVENT ALONG COMES SOME POINT IN

8    TIME WHEN THIS ENHANCEMENT IS SET ASIDE FOR THE REASON

9    THAT IT IS, I THINK IS SUCH A TRAVESTY OF DUE PROCESS.

10   THEN IT WOULD BECOME IMPORTANT.

11          ADDITIONALLY, SHOULD THERE EVER BE ANY

12   THOUGHT ON THE PART OF THE GOVERNMENT TO FILE A 35, I

13   THINK THAT AT THAT POINT IN TIME, THE ENTRY LEVEL WOULD

14   HAVE AN APPRECIABLE EFFECT ON YOUR HONOR'S

15   CONSIDERATION OF RULE 35.

16          AND GOING THROUGH MY NOTES, I FIND THAT THE

17   400 TO 700 GRAMS IS MORE APPROPRIATE THAN 18.14

18   KILOGRAMS.  YOUR HONOR, AT WHAT WE'RE TALKING ABOUT PER

19   KILOGRAM, THAT WOULD -- THAT WOULD BE $400,000, JUST

20   PAID TO GINNITY -- NOT 400.  IT'S A LITTLE LESS THAN

21   THAT BUT CERTAINLY WELL ABOVE $350,000 PAID TO GINNITY

22   BY MR. GARZA, IF YOU TOOK THE 18.4 (SIC) KILOGRAMS AS A

23   CORRECT AMOUNT AND IF YOU TOOK THE $20,000 PER KILOGRAM

24   REFERRED TO BY MS. NICHOLS.  AND CERTAINLY THE EVIDENCE

25   AND THE TESTIMONY IN THIS CASE DOESN'T INDICATE ANY

1    PURCHASE OF THAT MAGNITUDE.

2            THAT, IN AND OF ITSELF, SHOULD, TO SOME

3    DEGREE, RELAY THE AMOUNT SET FORTH IN PARAGRAPH 21.

4    AND SINCE THERE'S NOTHING OTHER THAN THAT SET FORTH IN

5    PARAGRAPH 21 EXCEPT WHAT I PRESENT TO THE COURT, BASED

6    UPON MY RECOLLECTION OF THE TRIAL TESTIMONY --

7            AND, AGAIN, JUDGE, TO REACH THAT 700 TO 400

8    KEYS, WE HAVE TO GO THROUGH, IS HE GOING TO BE HELD FOR

9    PURCHASING A POUND WHEN HE HAD $6,000, OR SPECIFICALLY

10   WHAT HE WAS ABLE TO PURCHASE FOR $6,000?

11            AND I THINK THE TRIAL TESTIMONY WAS CLEAR

12   THAT THAT WAS ALL HE WAS GOING TO GET, IF IN FACT HE

13   GOT ANYTHING.  AND CERTAINLY HE DID NOT GET ANYTHING,

14   BUT THAT'S NOT MATERIAL TO THE COURT NOW.

15            BUT I BELIEVE, CERTAINLY, THE LEVEL 28 IS

16   MUCH MORE APPROPRIATE THAN IS THE LEVEL 36.

17            COMING UP HERE THIS MORNING AND GOING

18   THROUGH NOTES WITH MR. KACKLEY AGAIN, I MIGHT HAVE BEEN

19   TWO LEVELS LOW IN MY AMOUNTS.  IF WE LOOKED AT THIS

20   BEING A ONE-POUND PURCHASE AS A RESULT OF THE PHONE

21   CALLS WHICH WERE TAPED, THAT MAY PUT US AT AN ENTRY

22   LEVEL OF 30, STILL WELL BELOW A 36.  AS THE COURT'S

23   WELL AWARE, THAT'S SIX LEVELS BELOW A 36.  THAT'S TO

24   WHICH I DIRECT MY ARGUMENT, IF IT PLEASE YOUR HONOR,

25   THAT 27 SHOULD COMMENCE -- PARAGRAPH 27, THE

```
 1        ENTRY-LEVEL OFFENSE LEVEL, SHOULD COMMENCE AT EITHER 28

 2        OR 30.  AND I THINK 28.

 3             THE COURT:  MR. WHERRY, I'D LIKE SOME TESTIMONY

 4        ON THAT, PLEASE.

 5             MR. WHERRY:  MR. CEINSKI?

 6             THE CLERK:  PLACE YOUR LEFT HAND ON THE BIBLE AND

 7        RAISE YOUR HAND.

 8                            - - - -

 9                       DAVID CEINSKI,

10        AFTER HAVING FIRST BEEN DULY SWORN, TESTIFIED AS FOLLOWS:

11                       DIRECT EXAMINATION

12        BY MR. WHERRY:

13             Q.    SIR, FOR THE RECORD, PLEASE, WOULD YOU STATE YOUR

14        FULL NAME, SPELL YOUR LAST NAME, AND TELL US BY WHOM YOU'RE

15        PRESENTLY EMPLOYED?

16             A.    SPECIAL AGENT DAVE CEINSKI, C-E-I-N-S-K-I.  I'M

17        PRESENTLY EMPLOYED WITH THE DRUG ENFORCEMENT

18        ADMINISTRATION.

19             Q.    WERE YOU THE CASE AGENT IN THE CASE OF U.S.

20        VERSUS GARZA, ET AL.?

21             A.    I WAS.

22             Q.    AND IN REGARD TO QUANTITIES OF METHAMPHETAMINE

23        THAT WERE BEING DISTRIBUTED AND SOLD DURING THE COURSE OF

24        THIS ACTIVITY -- THAT WOULD BE FROM SEPTEMBER 1994 THROUGH

25        FEBRUARY 2ND, 1996 -- WOULD YOU RELATE TO THE COURT WHAT
```

```
 1   QUANTITIES, BASED UPON YOUR INVESTIGATION, MR. HENRY

 2   ENRIQUE GARZA PURCHASED?

 3        A.    DURING THE COURSE OF THE INVESTIGATION, I

 4   ESTABLISHED THAT THE LOPEZ METHAMPHETAMINE TRAFFIC

 5   ORGANIZATION --

 6             MR. EDMUND:  I OBJECT ON THE GROUNDS THAT THE

 7   ANSWER'S NOT RESPONSIVE TO THE QUESTION AS PLACED.  BUT

 8   I THINK THAT PERHAPS --

 9             MAY I MAKE THE ARGUMENT?

10        THE COURT:  WELL, WE'RE TALKING ABOUT A

11   CONSPIRACY HERE.  YOU WILL HAVE A CHANCE TO

12   CROSS-EXAMINE.

13        MR. EDMUND:  YOUR HONOR, I WAS ONLY DIRECTING MY

14   ARGUMENT, IF IT PLEASE YOUR HONOR, TO WHAT GARZA

15   HIMSELF WAS RESPONSIBLE.

16        THE COURT:  HE'S RESPONSIBLE FOR THE CONSPIRACY.

17        MR. EDMUND:  IF THAT'S THE RULING THAT YOUR HONOR

18   HAS MADE, I WOULD WAIVE THE OFFICER'S TESTIMONY IN

19   REGARD TO THIS AND MAKE AN OBJECTION TO YOUR HONOR

20   MAKING THAT FINDING SO WE COULD GO FORWARD, SIR.

21        THE COURT:  THANK YOU, SIR.

22             THE COURT FINDS THAT MR. GARZA IS CHARGED

23   WITH A CONSPIRACY AND HE'S RESPONSIBLE FOR THE AMOUNTS

24   IN THE CONSPIRACY.

25        MR. EDMUND:  THANK YOU, YOUR HONOR.
```

14

1           YOUR HONOR, MAY WE GO TO THE NEXT PAGE, PAGE

2     6, TO PARAGRAPH 28, GOING BACK TO PARAGRAPH 16, YOUR

3     HONOR.  AND I THINK YOU FOUND THAT -- IN FAVOR OF MY

4     ARGUMENT IN THAT, AND THAT SHOULD APPLY TO PARAGRAPH 28

5     AND REMOVE THE TWO-LEVEL INCREASE FOR POSSESSION OF

6     FIREARM.

7           THE COURT:  ANY RESPONSE, MR. WHERRY?

8           MR. WHERRY:  THE INVESTIGATION BY THE DEA

9     DEVELOPED THAT PEAVY AND AMY NICHOLS REPRESENTED THAT

10    THEY KNEW THAT BOTH MR. HENRY GARZA AND MR. JUAN GARZA,

11    DURING THE COURSE OF THEIR DEALINGS WITH

12    METHAMPHETAMINE, CARRIED WEAPONS OR HAD WEAPONS IN

13    THEIR AUTOMOBILE OR WITH THEM.  WHETHER THAT WOULD BE

14    SUFFICIENT TO SUPPORT THE PARAGRAPH NUMBERS 16 AND 28

15    AS TO WHETHER THOSE TWO WITNESSES DEVELOPED THAT BY THE

16    GOVERNMENT'S CASE IN CHIEF, I DON'T REMEMBER.

17          THE COURT:  WELL, THE JURY CHOSE TO DISREGARD

18    PEAVY'S TESTIMONY IN COURT.

19               I'LL STRIKE THE TWO-LEVEL ENHANCEMENT.

20          MR. EDMUND:  MAY WE SKIP DOWN TO 31, YOUR HONOR,

21    AND ASK THAT YOU MAKE THE SAME RULING AS TO THAT

22    TWO-LEVEL INCREASE?

23          THE COURT:  THAT IS CORRECT.

24          MR. EDMUND:  THANK YOU, SIR.

25               IF IT PLEASE YOUR HONOR, REGARDING PARAGRAPH

15

1   30, THE COURT HAS MADE A FINDING, PUTTING THEM IN THE

2   CONSPIRACY ITSELF AND, CERTAINLY, MY ARGUMENT

3   CONCERNING FIVE PEOPLE NOW HAS NO MERIT.  BUT I SUGGEST

4   TO THE COURT THAT IF HE'S PUT INTO THE TOTAL

5   CONSPIRACY, AS OPPOSED TO A FOUR-LEVEL INCREASE FOR AN

6   ORGANIZER OR A LEADER, THEN HE SHOULD BE AT A TWO-LEVEL

7   INCREASE FOR HIS PARTICIPATION AND REDUCE THE FOUR TO

8   TWO, YOUR HONOR, ON PARAGRAPH 30.

9        THE COURT:  MR. GARZA IS ONE OF THE BIG PLAYERS.

10  HE'S ENTITLED TO A FOUR-LEVEL INCREASE.

11       MR. EDMUND:  THEN I WOULD CHANGE THE 35 --

12  PARAGRAPH 35 TO 40, BASED UPON YOUR HONOR'S FINDINGS.

13       THE COURT:  THAT IS CORRECT.  IT WOULD BE 40.

14            ANYTHING FROM THE GOVERNMENT ON THE PSI?

15       MR. WHERRY:  WE HAVE NO COMMENT ON THAT, YOUR

16  HONOR.

17       THE COURT:  MR. GARZA, IS THERE ANYTHING YOU'D

18  LIKE TO STATE TO THE COURT BEFORE I SENTENCE YOU?

19       THE WITNESS:  NO, SIR.

20       THE COURT:  COUNSEL, IS THERE ANYTHING FURTHER?

21       MR. EDMUND:  ONLY THAT A LEVEL 40 CARRIES A

22  SUBSTANTIAL SENTENCE.  YES, THE GOVERNMENT FILED A

23  NOTICE OF ENHANCEMENT.  I THINK THIS IS ONE OF THE

24  AREAS WHEREIN THE COURT HAS A DISCRETION WITHIN THE

25  GUIDELINES NOT TO ENHANCE.  A LEVEL 40 WITH A CRIMINAL

16

1    HISTORY CATEGORY OF V, AS I UNDERSTAND, WAS FOUND BY

2    THE PROBATION OFFICER.

3         THE COURT:  I'VE GOT FIVE.

4         MR. EDMUND:  JUDGE, I'M CONFUSED, TOO.  THE

5    ORIGINAL PSI SAID FIVE AND THEN IT APPEARED THAT IT

6    MIGHT BE SIX.  BUT IN EITHER EVENT, IT'S --

7         THE COURT:  YEAH.  IT DOESN'T MATTER, DOES IT?

8         MR. EDMUND:  NO, SIR.

9         THE COURT:  BUT AT LEAST LET'S GET THAT

10   STRAIGHTENED OUT, WHETHER IT'S A FIVE OR A SIX.

11        MR. WHERRY:  WOULD THE COURT ENTERTAIN EVIDENCE

12   IN REGARD TO THE GOVERNMENT'S INFORMATION THAT WAS

13   FOUND IN APRIL CONCERNING ENHANCEMENT?

14        THE COURT:  CERTAINLY.

15        MR. TOWERS:  YOUR HONOR, I MAY BE ABLE TO CLEAR

16   THAT UP A LITTLE BIT.

17             MR. GARZA SCORES OUT ON THE CRIMINAL HISTORY

18   CATEGORY A ROMAN NUMERAL V.  HOWEVER, SINCE HE'S A

19   CAREER OFFENDER, THE GUIDELINES SPECIFY THAT ALL CAREER

20   OFFENDERS SHALL HAVE A CRIMINAL HISTORY CATEGORY OF

21   ROMAN NUMERAL VI.

22        THE COURT:  THANK YOU.

23        MR. EDMUND:  I APOLOGIZE TO YOUR HONOR FOR NOT

24   KNOWING THAT.

25        THE COURT:  THAT'S OKAY.

17

1    MR. WHERRY:  IN COURT THIS MORNING, I PROVIDED TO

2   MR. KACKLEY AND MR. EDMUNDS (SIC) COPIES OF THE

3   GOVERNMENT'S EXHIBITS THAT COMPRISE --

4    MR. EDMUND:  MR. WHERRY, MAY I INTERRUPT, PLEASE?

5    MR. WHERRY:  YES, SIR.

6    MR. EDMUND:  WE HAVE NO OBJECTIONS WHAT WAS SET

7   FORTH IN THE PSI.  AND THESE EXHIBITS SIMPLY

8   CORROBORATE THE CONVICTIONS SET FORTH IN THE PSI, SIR.

9    MR. WHERRY:  WELL, WHAT MR. EDMUNDS HAS INDICATED

10  TO THE COURT, I'D LIKE TO MOVE FOR REMISSION INTO

11  EVIDENCE GOVERNMENT'S EXHIBITS MARKED NUMBERS ONE

12  THROUGH SEVEN, INCLUSIVE OF, IN SOME PARTS, A'S AND B'S

13  THAT CONSISTS OF THAT PARTICULAR EXHIBIT LIST.

14   MR. EDMUND:  NO OBJECTIONS, SIR.

15   THE COURT:  THEY WILL BE RECEIVED.

16   MR. WHERRY:  WE HAVE THEM MARKED.

17   THE COURT:  ANYTHING FURTHER?

18   MR. EDMUND:  NO, SIR.

19   THE COURT:  MR. WHERRY?

20   MR. WHERRY:  IF I MIGHT MAKE A COMMENT, YOUR

21  HONOR, THE EXHIBITS THAT WE HAVE PLACED INTO EVIDENCE

22  DO CORROBORATE AND SUPPORT THE INFORMATION THAT WE HAVE

23  FILED IN REGARD TO MR. HENRY GARZA'S PRIOR FELONY

24  CONVICTIONS IN HARDEE COUNTY, FLORIDA.

25       THE DOCUMENTS DO INDICATE THAT MR. GARZA --

18

1    IN REGARD TO THE TWO CASES CITED IN OUR INFORMATION AND

2    THE CERTIFIED COPIES IN OUR EXHIBIT, WHICH IS PART OF

3    THE EXHIBIT LIST NOW IN EVIDENCE WITH THE COURT --

4    WOULD SUPPORT THE FACT THAT THESE TWO PRIOR CONVICTIONS

5    PLUS THE CONVICTION IN THIS PARTICULAR CASE OF U.S.

6    VERSUS GARZA WOULD BE SUFFICIENT BASIS THAT THE COURT

7    COULD FIND AND IMPOSE A LIFE SENTENCE UPON MR. HENRY

8    GARZA.  WE WOULD REQUEST THE COURT TO DO SO.

9         THE COURT:  MR. GARZA, THE COURT HAS CONSIDERED

10   ALL OF THE EVIDENCE IN THE CASE AT TRIAL PLUS THE

11   EVIDENCE IN THE PRESENTENCE REPORT.  THE COURT WILL

12   SENTENCE -- WILL SET YOUR TOTAL OFFENSE LEVEL AT 40,

13   CRIMINAL HISTORY CATEGORY VI, AND WILL SENTENCE YOU TO

14   480 MONTHS IN THE BUREAU OF PRISONS PLUS A TEN-YEAR

15   SUPERVISED RELEASE TERM PLUS $150 SPECIAL ASSESSMENT.

16        YOU HAVE TEN DAYS IN WHICH TO APPEAL BOTH

17   YOUR CONVICTION AND SENTENCE.

18        IS THERE ANYTHING YOU'D LIKE TO STATE TO THE

19   COURT NOW THAT YOU HAVE BEEN SENTENCED?

20        THE WITNESS:  NO, SIR.

21        MR. EDMUND:  IF IT PLEASE YOUR HONOR, I PICKED UP

22   THE FILE THINKING IT CONTAINED A NOTICE OF APPEAL.  WE

23   WILL FILE ONE WITHIN TEN DAYS, SIR.

24        THE COURT:  ANYTHING FROM THE GOVERNMENT?

25        MR. WHERRY:  NO, YOUR HONOR.

19

```
 1              THE COURT:  THANK YOU.
 2          THE CLERK:  THE NEXT CASE BEFORE THE COURT IS THE
 3   UNITED STATES OF AMERICA VERSUS JUAN GARZA, CASE NUMBER
 4   96-19-CR-ORL-18.
 5              MR. EDMUND:  MAY WE LEAVE THE COURTROOM, SIR?
 6              THE COURT:  CERTAINLY.
 7          THE CLERK:  WOULD THE DEFENDANTS PLEASE APPROACH?
 8              WOULD COUNSEL FOR THE GOVERNMENT IDENTIFY
 9   HIMSELF FOR THE RECORD?
10          MR. WHERRY:  FOR THE RECORD, MY NAME IS KENDALL
11   WHERRY.  I'M AN ASSISTANT UNITED STATES ATTORNEY.
12          THE CLERK:  COUNSEL FOR THE DEFENDANT, LUIS
13   DAVILA?
14              THE RECORD WILL SHOW THAT COUNSEL FOR THE
15   DEFENDANT IS NOT PRESENT.
16              THE COURT:  ALL RIGHT.
17              CALL THE NEXT CASE.
18                    - - - - -
19
20
21
22
23
24
25
```

1                          CERTIFICATE

2

3    STATE OF FLORIDA
     COUNTY OF ORANGE

4

5
          I, NINETTE HERNANDEZ, COURT REPORTER, CERTIFY THAT
6    I WAS AUTHORIZED TO AND DID STENOGRAPHICALLY REPORT THE
     FOREGOING PROCEEDINGS AND THAT THE TRANSCRIPT IS A TRUE AND
7    COMPLETE RECORD OF MY STENOGRAPHIC NOTES.

8          I FURTHER CERTIFY THAT I AM NOT A RELATIVE,
     EMPLOYEE, ATTORNEY, OR COUNSEL TO ANY PARTY NOR TO THE
9    ATTORNEYS OF SAID ACTION, NOR IN ANY WAY INTERESTED IN THE
     OUTCOME THEREOF.

10
          DATED THIS 8TH DAY OF AUGUST 1996.

11

12

13                    NINETTE HERNANDEZ
                      REGISTERED PROFESSIONAL REPORTER

14

15
                         NINETTE HERNANDEZ
16                 Notary Public, State of Florida
                   My comm. expires June 22, 1998
17                     Comm. No. CC386220

18

19

20

21

22

23

24

25

M'FILM ROLL # _____

DOCUMENT # 0871

FILED

## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

96 JUL 18 AM 9:43

UNITED STATES OF AMERICA

v.                                          96-19-CR-ORL-18

ENRIQUE GARZA                               Jack T. Edmund
 SSN: 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                           Steve Kackley
 USMN: 18258-018
 DOB: 01-04-54

## JUDGMENT IN A CRIMINAL CASE

The defendant, having been found guilty to counts one, six, and seven of the indictment after a plea of not guilty, is adjudged guilty of such counts involving the following offenses:

| | | |
|---|---|---|
| Count One | 21 USC 846<br>21 USC 841(a)(1) | Conspiracy to Possess with Intent to Distribute<br>Methamphetamine (Offense Concluded: 02-02-96) |
| Count Six | 21 USC 841(a)(1)<br>18 USC 2 | Possess with Intent to Distribute Methamphetamine<br>(Offense Concluded: 08-01-95) |
| Count Seven | 21 USC 846 | Attempt to Possess with Intent to Distribute Methamphetamine (Offense Concluded: 01-01-96) |

Pursuant to the Sentencing Reform Act of 1984, the defendant is sentenced as provided in pages two through four.

The defendant has been found not guilty on counts three, four, and five, and is discharged as to such counts.

**IT IS ORDERED** that the defendant shall pay a special assessment of $150.00 immediately.

**IT IS FURTHER ORDERED** that the defendant shall notify the United States attorney for this district within thirty days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.

Sentence imposed: 07-17-96

Defendant's Address:

_____
G. KENDALL SHARP
United States District Judge

3 Hickory Street
Zolfo Springs, FL 33890

July 16, 1996

I certify the foregoing to be a true and correct copy of the original.
RICHARD D. SLETTEN, Clerk
United States District Court
Middle District of Florida

By: _____

Died

ENRIQUE GARZA                                           Page two of four.
96-19-CR-ORL-18

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **480 months.**

The defendant is remanded to the custody of the United States marshal.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to_____at

_____, with a certified copy of this Judgment.

_____
United States Marshal

By        _____
Deputy Marshal

ENRIQUE GARZA                                              Page three of four.
96-19-CR-ORL-18

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of
TEN (10) YEARS.  The defendant shall report to the probation office in the district to which
the defendant is released within seventy-two (72) hours of release from the custody of the
Bureau of Prisons.  While on supervised release, the defendant shall not commit another federal,
state, or local crime and shall not illegally possess a controlled substance.  The defendant shall
refrain from any unlawful use of a controlled substance and submit to a drug test within fifteen
days of release from imprisonment and at least two periodic drug tests thereafter, as directed
by the probation officer.  The defendant shall not possess a firearm or destructive device. The
defendant shall comply with the standard conditions that have been adopted by this court (set
forth below).  If this judgment imposes a fine or a restitution obligation, it shall be a condition
of supervised release that the defendant pay such fine or restitution that remains unpaid at the
commencement of the term of supervised release.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court of probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer within ten days of any change in residence or employment;

7) the defendant shall refrain from the excessive use of alcohol;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

ENRIQUE GARZA                                                    Page four of four.
96-19-CR-ORL-18

# STATEMENT OF REASONS

The court adopts the factual findings and guideline application in the presentence report except the court deleted the two level enhancements pursuant to USSG 201.1(b)(1) and 3B1.4.

### Guideline Range Determined by the Court:

Total Offense Level:  **40**

Criminal History Category:  **VI**

Imprisonment Range:  **360 to LIFE**

Supervised Release Range:  **10 years**

Fine Range:  **$25,000 to $24,000,000 (waived)**

Restitution:  N/A

The sentence is within the guideline range, that range does exceed 24 months, and the Court stated no reason for the point in the range defendant was sentenced.

July 23, 1996


Jack T. Edmund
423 Pool Branch Road
Fort Meade, FL  33841

Robin Beaver
103B N. Poplar St.   P.O. BOX 1652 (Mailing)
Zolfo Springs, FL  33890

Dear Mr. Edmund:

I, Robin Beaver, do hereby swear that the information this letter contains is to the best of my knowledge the truth.

I am writing this letter to clarify a few things:
First, on February 12, 1996, when I was questioned by Special Agent Ladner the information that I gave him was not the truth.  I was not under oathe and was very confused and scared.  Mr. Ladner informed that Mr. Enrique and Juan Garza had given him information about me, which is not true, and that is why I said those things.  The main one being, making seven trips to Orlando with Henry Garza.  That is not true.  Also, I did not sell chrystal methamphetamine for Henry Garza, and finally, Mr. Garza did not buy chrystal methamphetamine from Mr. Bruce Beaver.  I used to live with Mr. Bruce Beaver and Mr. Garza met Mr. Beaver through me and I was present during their encounters and drugs were never involved or discussed.

I have discussed this information with my lawyer and to the best of my knowledge Honorable Judge Sharp was supposed to receive this information, but during sentencing it was brought to my attention that he did not.

I am very sorry about this situation, but I feel everyone should know the truth and the information contained on my investigative report and Mr. Garza's PSI is not the truth, and I feel it should be brought to your attention.  I am willing to do whatever possible to help resolve this situation.  Please let me know what I can do.  My home number is (941) 735-2812.

Sincerely,

*Robin Beaver*

Robin Beaver


STATE OF FLORIDA:
COUNTY OF HARDEE:


SWORN to and subscribed before me this 25th day of July, 1996.


*Janie Pearson*

JANIE PEARSON
NOTARY PUBLIC
My commission expires:

]

Janie Pearson
Notary Public, State of Florida
Commission No. CC 530567
My Commission Expires 3/22/00
Bonded Through Fla. Notary Service & Bonding Co.

222

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

vs.              Case No.:  96-19-CR-ORL-18

ENRIQUE GARZA,
JUAN GARZA,

       Defendants.

------------------------------------

May 2, 1996

Transcript of Trial Proceedings

Before The Honorable G. KENDALL SHARP
United States District Judge

Anthony Rolland, RMR
Official Court Reporter
80 North Hughey Avenue, Room 510
Orlando, FL  32801
(407) 648-2288

Proceedings recorded by mechanical stenography,
transcript produced with computer-aided transcription

ANTHONY ROLLAND, RMR
(407) 648-2288

223

APPEARANCES:

For the Plaintiff:          Kendell W. Wherry
                            Assistant US Attorney
                            201 Federal Building
                            Orlando, FL   32801


For the Defendant          Jack T. Edmund
Enrique Garza:             423 Pool Branch Road
                           Ft. Meade, FL   33841

                           Steve Kackley
                           357 S. Orange Street
                           Sebring, 33870

For the Defendant          Luis Davila
Juan Garza:                911 N. Main Street
                           Kissimmee, FL   34744

Case 1:01-cv-01128-SHR-KH    Document 2    Filed 06/22/2001    Page 69 of 141

1                 P R O C E E D I N G S

2          (JURY IN.)

3          THE COURT:  Mr. Wherry, Mr. Kackley, Mr.

4   Edmund, Mr. Davila, are you all ready to proceed?

5          MR. EDMUND:  Yes, Your Honor.

6          MR. WHERRY:  We're ready to proceed, Your

7   Honor.

8          THE COURT:  All right.

9   Whereupon:

10          MICHAEL T. KOLEHMAINEN,

11   called as a witness, having been first duly sworn

12   according to law, testified as follows:

13                 DIRECT EXAMINATION

14   BY MR. WHERRY:

15   Q.    Sir, for the record, please, will you state

16   your full name, spell your first name and also your

17   last name?

18   A.    Michael T. Kolehmainen.  M I C H A E L, K O L E

19   H M A I N E N.

20   Q.    And by whom are you presently employed?

21   A.    I'm a detective for the city of Daytona Beach

22   currently assigned to the Drug Enforcement

23   Administration, Orlando office, as a task force

24   agent.

25   Q.    How long have you been assigned to the DEA as a

225

1  task force agent?

2  A.    Approximately two years.

3  Q.    And would that have included on or about the

4  February 2, 1996?

5  A.    Yes, sir, it would.

6  Q.    Calling your attention to the date of February

7  2, 1996, were you on duty that particular day as a

8  DEA agent?

9  A.    Yes, sir, I was.

10  Q.    And on that particular occasion, could you tell

11  us what you were doing in the way of special type of

12  assignment?

13  A.    Earlier in that day Special Agent Ceinski had

14  contacted me and asked if I would be available to

15  assist him in an ongoing investigation in which he

16  was conducting.

17  Q.    Was it just you and Mr. Ceinski or were there

18  other agents involved in that meeting?

19  A.    No, sir.  There were other agents involved in

20  that meeting.

21  Q.    What was the nature of that particular briefing

22  by Mr. Ceinski?

23  A.    At that point in time he explained the

24  investigation to us, gave out our primary

25  assignments, what each individual would be doing to

Case 1:01-cv-01128-SHR-KH Document 2 Filed 06/22/2001 Page 71 of 141

1  assist him in his investigation.

2  Q.    And what was this investigation you were going

3  to assist him with?

4  A.    We were to purchase a quantity of

5  methamphetamine.

6         THE COURT:  Excuse me, sir.  What was the

7  date that you said?

8  A.    February 2, sir.

9  Q.    And on that particular occasion, where were you

10 and Mr. Ceinski and the other agents meeting for this

11 briefing?

12 A.    The first briefing was at our office.  From

13 there we were to get a specific time to meet at a

14 secondary location and which we did.  We were briefed

15 shortly then and then Special Agent Ceinski deployed

16 us to the areas of our responsibilities.

17 Q.    Now, where were you eventually deployed for

18 your responsibility in conjunction with the other

19 agents?

20 A.    My primary assignment that day was to conduct

21 surveillance.  I proceeded from the location in which

22 we were to the Choice Inn which is located on 436.

23 Q.    436 in what city or location?

24 A.    It's on Lee Road, I believe it's within Orange

25 County.

227

1   Q.    And did each agent participating in that

2   particular event have an assignment where they were

3   going to be located?

4   A.    Yes, they did.

5   Q.    And at the Choice Inn where were you designated

6   to for your assigned location?

7   A.    My assigned location was to obtain a vantage

8   point to where I could observe room 113 at Choice

9   Inn.

10  Q.    Now, what time of the day was it that you

11  assumed this particular position with the rest of the

12  agents at that location of the Choice Inn?

13  A.    It was probably about a quarter to three when I

14  arrived and took up that position.

15  Q.    And the location where you specifically were

16  positioned, where was that in relation to room 113?

17  A.    In relationship to that room, I was to the

18  northeast of it.  I pulled into a parking space to

19  where I could observe more not directly facing the

20  room, but more about an angle to where I could see

21  the whole corridor of rooms and that room in

22  particular.

23  Q.    And from that particular vantage point, did you

24  have a clear vision to the door of one room, room

25  113?

*KOHELMAINEN - DIRECT - WHERRY*

228

1  A.    Yes, there were no obstructions in my sight of

2  vision.

3  Q.    Now, at that particular location that you

4  described to us and from that vantage point as you

5  observed that room 113, could you tell us what

6  happened --

7  A.    Yes.

8  Q.    -- from the point in time you assumed your

9  position?

10  A.    I assumed the position there.  At approximately

11  3:10 I observed a confidential source arrive in his

12  vehicle.  He exited his vehicle, went up to the room,

13  was gained entrance into the room.  Approximately ten

14  minutes later I observed a beige colored Chevrolet

15  Corvette pull into the parking area.  It backed into

16  the, into a space right in front of the room.  I

17  observed an individual exit the vehicle, he got out

18  of the vehicle, stood around peering throughout the

19  area as if he was looking for somebody.

20          MR. EDMUND:  Objection, Your Honor.  That's

21  an opinion and conclusion, if you please, Your Honor.

22          THE COURT:  Overruled.  He can give an

23  opinion.

24  A.    Appeared that he was looking for somebody or

25  something.  Stood there for maybe two or three

229

1   minutes.  After that he went into the room.  It was

2   about five or ten minutes after that, the

3   confidential source exited the room.  I observed him

4   carrying a green bank bag.  He had gotten into his

5   vehicle and at that point in time he left the motel.

6   Q.    And at the point in time that you had room 113

7   under observation, did you see anybody leave or enter

8   other than what you, persons you've described and

9   told us about now?

10   A.    About five minutes later I observed the same

11   individual who had driven the Corvette up to the

12   motel exit the room, he stood outside of the room,

13   again he was looking around the area.  In a few

14   minutes he went into his vehicle, searched around in

15   there for just a few minutes, appeared to have

16   retrieved a couple of beverages, had one in each

17   hand.  As he got back out of the car, he then was

18   standing looking around the parking area like he was

19   purposely looking for somebody or something, and then

20   after a minute or two he went back into the hotel

21   room.

22   Q.    And this was after the confidential source had

23   left the room?

24   A.    Yes.  After he had left, that was the only

25   individual who had either went into the room or left

230

1   the room.  There was no other activity coming or

2   going from the room.

3   Q.    And did you maintain your position of

4   observation of room 113 following what you've just

5   told us concerning the person reentering the room?

6   A.    Yes.  I maintained that position until a point

7   in time was contacted via the radio that Special

8   Agent Ceinski and the individuals were going up to

9   knock and announce and enter the room.  At that point

10  in time he assigned me to move my vehicle from my

11  vantage point as they approached the room, my

12  assignment was to take my vehicle and to block the

13  Corvette in so it would not be able to exit the

14  parking lot.

15  Q.    And did you so move your vehicle accordingly?

16  A.    Yes, I did.

17  Q.    And could you relate to us and tell us what

18  then happened after you had shifted your position to

19  block that particular Corvette vehicle?

20  A.    I exited my vehicle and stood outside the hotel

21  as the other officers went in and affected the

22  arrest.

23  Q.    Did you enter room 113?

24  A.    No, sir, I did not.

25  Q.    You remained outside during the course of this

231

1  activity of other officers going into the room?

2  A.    Yes, sir, I did.

3  Q.    Did you see Mr. Ceinski go into room 113?

4  A.    Yes, I did.

5  Q.    Do you remember the names of any of the other

6  officers that went in?

7  A.    No, sir, I don't.  They were from Highlands

8  County Sheriff's Office, I had never met them before.

9  Q.    How long did you remain on that site on that

10 particular afternoon, Mr. Kohelmainen?

11 A.    I stayed on and assisted in just watching the

12 outside of the room to make sure no other individuals

13 came or left and until Special Agent Ceinski told me

14 that my assignment would get completed.

15 Q.    The person now that you've indicated you saw

16 drive up in the Chevrolet Corvette, do you see that

17 person in the courtroom today, and if so, could you

18 identify him?

19 A.    Yes, sir, I do.  He's sitting over at the

20 defense table, the gentleman is wearing a blue shirt.

21 Q.    Could you tell us what color hair he might

22 have?

23 A.    He has black hair, sir.

24 Q.    And does it appear like he has a dark tan?

25 A.    Yes, sir.  Clean shaven.

232

1    Q.    Let the record reflect the witness has

2    identified Mr. Johnny Garza as the individual that he

3    observed that particular afternoon.

4              You made mention about a green bag.  I show

5    you government exhibit marked number 10 in evidence.

6    Can you, would you look at that, please?

7              MR. EDMUND:  May I ask the number again,

8    please, sir?

9              MR. WHERRY:  Ten.

10             MR. EDMUND:  Thank you.

11   Q.    Does that appear to be -- could you describe

12   that particular number 10 that's in your hand, sir?

13   A.    Yes, sir.  It is a green nylon locking bank

14   bag, Wauchula State Bank, Zephyr Springs, number 23

15   on the front of it.

16   Q.    Does that appear to be the bag --

17   A.    Yes, sir, it appears to be the same bag that

18   the confidential source was carrying with him when he

19   exited the motel room.

20             MR. WHERRY:  That would conclude our

21   examination of this witness, Your Honor.

22             MR. EDMUND:  No questions, if it please the

23   court.

24             MR. DAVILA:  Your Honor, I have no

25   questions either.

233

1          THE COURT:  Thank you, sir.  You're

2     excused.

3          THE WITNESS:  Thank you very much, Your

4     Honor.

5          THE COURT:  Call your next witness.

6     Whereupon:

7               R. DON LADNER,

8     called as a witness, having been first duly sworn

9     according to law, testified as follows:

10                DIRECT EXAMINATION

11    BY MR. WHERRY:

12    Q.   Sir, for the record, would you tell us your

13    full name, spell your first name and last name?

14    A.   My name is first initial R., Don, D O N,

15    ladner, L A D N E R.  Currently employed as a special

16    agent with the Florida Department of Law

17    Enforcement.

18    Q.   How long have you been so employed by the FDLE,

19    sir?

20    A.   I've been with FDLE for just over one year.

21    Previous to that I was employed as a detective

22    sergeant in organized crime unit for the Manatee

23    County Sheriff's Office.  Before being a sergeant I

24    was in the narcotics investigation section, also the

25    homicide section.  I have a total of 14 and a half

KOHELMAINEN - DIRECT - WHERRY

234

1    years law enforcement.

2    Q.    On or about the 2nd of February, 1996, were you

3    then employed by the FDLE?

4    A.    Yes, I was.

5    Q.    On that particular date were you assisting the

6    Drug Enforcement Administration, a Mr. Ceinski, in an

7    investigation on that date?

8    A.    Yes, I was.

9    Q.    And specifically could you relate to us where

10   and what you were doing on that occasion?

11   A.    I was part of the arrest team that entered the

12   Choice Inn motel room and placed Enrique Henry Garza

13   and also Juan Johnny Garza under arrest.

14   Q.    And those two individuals that you just named,

15   do you see them in the courtroom; if so, can you

16   identify them?

17   A.    Yes, I do.  Mr. Enrique Garza, who I also know

18   as Henry, is seated third from the end of the table

19   with the green, white and blue shirt and wearing

20   glasses with a beard and Mr. Juan Garza, who I also

21   know as Johnny, is seated at the end of the table

22   with the blue shirt.

23   Q.    Let the record reflect the witness has

24   identified each of the two defendants in this case.

25          In regard to that particular assignment

235

1   with the DEA, were you designated to perform any

2   special observing of the location?

3   A.    Not initially.  My job was to be the entry team

4   to affect the arrest, which I accompanied Agent

5   Ceinski and agents of the Highlands County Sheriff's

6   Office and other DEA members into the room.  Upon

7   entering the room myself and another agent affected

8   the arrest of Mr. Juan Garza and then stood by in the

9   room and then later an interview that occurred I

10  witnessed between Agent Ceinski and Mr. Juan Garza.

11  Q.    Now, when you entered the room, were there a

12  number of other agents that entered the room also?

13  A.    Right.  At the initial entry there were several

14  of us.  I was probably third or fourth in the room.

15  Q.    When you entered the room you saw each of the

16  two defendants, Mr. Henry and Johnny Garza?

17  A.    Yes, I did.

18  Q.    And the law enforcement officers?

19  A.    Yes.

20  Q.    And what kind of garb were they wearing?

21  A.    The law enforcement officers?

22  Q.    Yes, sir.

23  A.    Were dressed in, for instance, I was wearing of

24  course a bulletproof vest, but also a raid jacket

25  which states police, Florida Department of Law

236

1   Enforcement on it, also badges exposed.  The drug

2   enforcement agents were wearing drug enforcement DEA

3   police raid type shirts and hats and Highlands County

4   Sheriff's Office were wearing shirts and hats also

5   identifying them.

6   Q.    Other than the people you just described, there

7   was no one else in the room?

8   A.    Just the defendants, Johnny and Henry.

9   Q.    And while you're in the room, could you tell us

10  what if anything you saw in the room itself other

11  than people?

12  A.    Yes.  I recall noting the, as you go into the

13  room --

14          MR. EDMUND:  Your Honor, I object on the

15  grounds of not being material.

16          THE COURT:  Overruled.

17  A.    As you enter the room, the layout of the room

18  is directly to your left, there's a counter of course

19  where the TV is and the dresser type area.  To the

20  right immediately in there's one bed, then there's a

21  little night stand and then a farther bed and of

22  course the bathrooms in the back.  I observed on the

23  bed -- between the two beds a cross with what

24  appeared to be a vial with what is known as

25  methamphetamine resin, it's broken, and also black,

237

1  it looks like a propane lighter, but it emits a large

2  flame and it's used in smoking methamphetamine in

3  able to get the flame out large enough to heat up the

4  two tubes.  That was laying between the beds on the

5  floor.  The one vial appeared to be broken and they

6  were closest to the farthest bed.

7          Also I observed only counter as you go into

8  the left of the dresser towards the far end near the

9  bathroom a brown wallet which I looked in and had

10  Enrique Garza's driver's license in it or ID and a

11  set of keys.

12  Q.    It's been placed before you, Mr. Ladner,

13  government exhibit marked number 15 for

14  identification.  Would you examine the contents of

15  that particular brown bag?

16  A.    Yes.  This appears-to-be-the brown-wallet --

17  just a moment.  This appears to be the wallet that I

18  noted on the counter.  It has Enrique Garza's

19  driver's license in it just as I had seen that day.

20  Also in the bag --

21          MR. EDMUND:  I object to any response, any

22  opinion outside of his area of expertise, if it

23  please, Your Honor, and object on predicate to any

24  other information he intends to testify to.

25          THE COURT:  Overruled.

238

A.    Also in the bag appear to be the keys that were

laying next to the wallet on the dresser, that with

the yellow tag on it.

          In the bag, in a clear plastic bag there's

some money and also jewelry.  The jewelry appears to

be that that was worn at the time of the arrest by

Mr. Henry Garza and Enrique Garza.  The jewelry was

removed, some of the necklaces from Mr. Garza and

placed into the custody.

          There's a cell phone which I observed the

cell phones laying, one of them laying on the bed,

the actual bed as you go in be the first bed on the

right and this is similar to the one, looks like the

one that I saw there.

          This is a broken glass tube which I

observed appears to be the one with the residue on it

which was at the foot of the bed in between the two

beds with the methamphetamine residue.

          And this is the, it's called a microtorch,

it's like a cigarette lighter except that it exerts a

flame about this far which I know to be common

paraphernalia used in smoking of methamphetamine.

This was found also that I observed it was between

the two beds on the floor near this pipe here, this

broken glass.

239

1    Also in this bag there's a knife and a

2  pager which are in the bag but I can't say were at

3  the scene.

4  Q.    Now, during the course of this particular

5  arrest that was being conducted and that you were

6  participating in, was Henry Garza and Juan Garza

7  taken into custody by DEA?

8  A.    Yes, they were.

9  Q.    And at that particular time were they

10  restrained in any way?

11  A.    They were handcuffed.

12  Q.    And following that particular event that you

13  described to us, what if anything did you next do in

14  regard to your assignment that afternoon?

15  A.    My next involvement would have been to

16  accompany Agent Ceinski during an interview that was

17  conducted with Johnny Garza, Juan, also known as

18  Johnny Garza, who is seated at the table.

19  Q.    And where did you conduct an examination or

20  interview with Mr. Garza?

21  A.    It was done initially right after the arrest.

22  Of course, as is common procedure, we want to

23  separate the defendants.  Johnny was placed in the

24  back seat of Agent Ceinski's undercover DEA vehicle

25  which is a large four door vehicle.  At that point

1  Agent Ceinski spoke with Juan Garza and I witnessed

2  the conversation.

3  Q.     At that particular point, was Mr. Johnny Garza

4  advised of his rights in your presence?

5  A.     Yes, he was.

6  Q.     Do you know what Mr. Ceinski advised him of his

7  rights?

8  A.     I know that it was read from a card, I believe,

9  that he had in his presence the basic Miranda

10  warnings.  I do not have the card that he read from,

11  but I know them from my experience to be the basic

12  rights, that you have the right to remain silent and

13  not to speak, and that if you decide to speak without

14  an attorney present, if you cannot afford an

15  attorney, one will be represented for you before

16  questioning.  If you decide to answer questions now,

17  you can stop at any time until an attorney is

18  appointed.  And anything you said will be used

19  against you in a court of law.  And he was asked if

20  he understood those, he said he did and he agreed to

21  speak with us.

22  Q.     Was Mr. Johnny Garza able to understand what

23  was said to him by Mr. Ceinski?

24  A.     Yes.

25  Q.     And after he was advised as you've indicated,

241

then what happened, if anything?

A.    Agent Ceinski asked him, you know, how he had

gotten up there or why he was in Orlando.  He said

that his brother, Henry, had asked him to drive him

up there and that initially he asked him did you know

why you were coming up here and he said no, he just

wanted me to drive him.  And Agent Ceinski said so

you didn't know why?  And Johnny said, well, we came

up to meet some girls.  He was asked, you know, who

were the girls or what they looked like and he

couldn't, he didn't know, was very vague in that

area.

He asked him if he was in the room when a

man came in, he said he was not and he said that he

was in the car, which was a Corvette that was backed

into a parking area right out in front.  And he said,

he asked why he was in the car, not in the room, he

said he was sleeping and that he had seen somebody

going up but he couldn't describe the person and said

he didn't know anything, he had been outside in the

car asleep.  And that was pretty much, he at that

point didn't say any other statements.

Q.    That's when when the conversation ended?

A.    Pretty much there.

Q.    And what time was it that particular afternoon

242

1  *that this particular event that you described to us?*

2  *A.     It would have been, and I don't have the exact*

3  *time, but about four, four in the afternoon would*

4  *have been the area that the arrests had taken place.*

5  *At the time I had driven up from Highlands County to*

6  *assist and had gotten there kind of halfway into the*

7  *investigation.*

8          *MR. WHERRY:  Nothing further, Your Honor.*

9  *Government would offer number 15 into evidence.*

10          *THE COURT:  Any objection?*

11          *MR. EDMUND:  Only the ones I made earlier*

12  *at this point.*

13          *MR. DAVILA:  No, Your Honor.*

14          *MR. EDMUND:  As to his area of expertise.*

15          *THE COURT:  Well, I'm going to sustain the*

16  *objection because there's been no chain of custody.*

17  *All he said was that those items looked similar to*

18  *the ones that he saw in the room.  They're not*

19  *admissible through this defendant so I'll sustain the*

20  *objection.*

21          *Mr. Edmund, any cross?*

22          *MR. EDMUND:  If it please Your Honor, I*

23  *have no questions.*

24          *THE COURT:  Mr. Davila.*

25          *MR. DAVILA:  None, Your Honor.*

243

1          THE COURT:  Thank you, sir.  You're

2    excused.

3          Call your next witness.

4          MR. WHERRY:  That would conclude our case

5    in chief, Your Honor.

6          THE COURT:  All right.  Show the jury out.

7          (JURY OUT.)

8          THE COURT:  I'll entertain any motions at

9    this time.

10         MR. EDMUND:  If it please Your Honor.

11         Comes now the defendant, Enrique Garza,

12   also known as Henry Garza, and moves this honorable

13   court to instruct this jury pursuant to Rule 29 to

14   return judgments of acquittal as to each of the

15   counts in which he is charged, count one, the

16   conspiracy, counts three, four, five and six,

17   possession, and count seven as to an attempt to

18   obtain a pound of methamphetamine.

19         The circumstances are such, if it please

20   Your Honor, as to counts three, four, five and six,

21   as to make each of the dates alleged in the

22   information so far from the date of any alleged

23   transaction.  I think any transaction there's any

24   real corroboration of is the 15th of May of 1995, as

25   to take it out of the on or about and within a

*MOTIONS*

244

1  reasonable time, if it please the court.

2           As to count one, the only witness whom I

3  examined who was charged as a part of this conspiracy

4  was a witness Beaver.  The witness Beaver indicated

5  in his testimony and it's unrebutted, if it please

6  the court, that he was not involved in any fashion in

7  what's considered the conspiracy, and I understand

8  that's a legal determination for Your Honor to make

9  at this time, but that he was involved in a buy-sell

10 operation with Ginnity, and any association he ever

11 had with Enrique Garza was strictly a buy-sell of

12 methamphetamine operation.

13          As to the count seven, if it please the

14 court, the charge is and it's critical only as as it

15 goes to the entry level on the sentencing guidelines,

16 I suggest to the court, that Enrique Garza was

17 attempting to purchase a pound of methamphetamine on

18 the 2nd of February, 1995.  He went up there, Your

19 Honor, with $6,000 as opposed to $18,000.  The

20 conversation on the tape, as I recall the

21 conversation on the tape questioned at the time

22 whether that was going to be sufficient for any pound

23 of methamphetamine, if it please the court.  So as to

24 the total amount, and again this may go only to

25 sentencing, but I think it goes to perhaps guilt or

245

1    innocence and include that in my Rule 29 motion, if

2    it please Your Honor, because of the minor amount of

3    approximately six grams that he would have been able

4    to, yeah, six grams, that he had been able to

5    purchase with that kind of money, if it please the

6    court.  Not six grams.  Six ounces, sir.  I'm sorry.

7         I have no further argument, if it please

8    your Honor.

9         THE COURT:  Mr. Davila.

10        MR. DAVILA:  Yes, Your Honor.

11        Yes, Your Honor, on behalf of Johnny Garza

12   I would make the same motion under Rule 29,

13   specifically under count one, the conspiracy.  I

14   think the credible evidence, the best evidence they

15   have doesn't show that John Garza conspired or at

16   best that he was just there perhaps.  I don't think

17   that falls into conspiracy.  And the best credible

18   evidence that the people presented does not show that

19   he even attempted to possess or possessed.  Your

20   Honor, based on that I would request a judgment of

21   acquittal.

22        THE COURT:  All right.  Court finds that

23   with regards to counts one and seven that the

24   government has presented a prima facie case for the

25   jury to consider.  I'd like to hear response from the

246

1  government as to the substantive counts as to each of

2  the specific dates.  That would be three, four, five

3  and six.

4  　　　　MR. WHERRY:  Three, four and five, Your

5  Honor?

6  　　　　THE COURT:  Pardon?

7  　　　　MR. WHERRY:  Did you say three, four and

8  five?

9  　　　　THE COURT:  Three, four, five and six.

10  　　　　MR. WHERRY:  In regard to, if I could take

11  them in sort of inverse order starting with count

12  number six.  I suggest to the court that in regard to

13  count number six the evidence would establish that

14  there was, on or about the date of August 1995, the

15  location in Orlando, motel near Lee Road, that the

16  defendant Enrique Henry Garza and Juan Johnny Garza,

17  with an individual named Amy Nichols, were at this

18  particular location and motel when for the purpose of

19  or making a buy from Todd Ginnity.  Amy Nichols and

20  Mr. Juan Johnny Garza left the particular motel room

21  and went to a parking lot, a facility location near

22  an Eckerd drug store or an Eckerd drug store parking

23  lot where they met with Mr. Todd Ginnity.  At that

24  particular location and site the question was raised

25  by Mr. Johnny Garza as to showing money to Mr. Todd

247

Ginnity who Mr. Ginnity wanted to see the money.
There was a call or contact made by Mr. Johnny Garza
with Henry Garza who Henry Garza authorized Mr.
Johnny Garza to show the money to Todd Ginnity.  The
money being shown to Todd Ginnity of the amount
evidently of around whatever the purchase price was,
I don't have that noted here, Your Honor, but there
was a purchase price that had been set.  The
methamphetamine was produced by Mr. Ginnity and the
transaction was then completed.

       THE COURT:  That was the $60,000 day?

       MR. WHERRY:  I think that was the one, Your
Honor.

       THE COURT:  60,000.

       MR. WHERRY:  Subsequently the witness
testified after the completion of the transaction Mr.
Johnny Garza and Miss Amy Nichols, as I understand,
went back down towards Highlands County but were
called back to Orlando by Mr. Henry Garza to the
motel, at which point in time they began to weigh and
package the contents of this particular transaction,
this methamphetamine.  The purpose was to prepare it
and make it ready for distribution and sale at the
location down in Highlands County where each of the
two defendants had customers for the purchase of

MOTIONS

248

methamphetamine.

1

2          THE COURT:  All right.  The court finds the

3   government has presented prima facie as to count

4   six.

5          MR. WHERRY:  With regard to count number

6   five, Your Honor, my recollection that the evidence

7   would establish that Miss Candice Peve had indicated

8   it was around that date and time that she traveled to

9   Orlando with Mr. Henry Garza wherein she said that

10   they met with a person by the name of Todd for the

11   purpose of the trip to Orlando and meeting of this

12   person by the name of Todd which was for the purchase

13   of a quantity, I think a pound of methamphetamine.

14          THE COURT:  My notes with Miss Peve say

15   that that was in June.  I don't know whether it's the

16   end of June, which would fall into this, or the first

17   of June.  What's the difference between count five

18   and count four?

19          MR. WHERRY:  Count five and four I don't

20   believe there's any difference other than the

21   particular date.  I was going to say that count

22   number, the July count, count number five, there

23   would be the lease agreement from Enterprise lease

24   that I think scheduled and showed that it was

25   sometime in July that Mr. Garza rented this car and

MOTIONS

249

1      --

       THE COURT:  That was 6-16.  That would be

2  June.

       MR. WHERRY:  The lease agreement was 6-16?

       THE COURT:  That's what my notes have.

       MR. WHERRY:  This date on the government

  number 21 does bear 6-16, Your Honor.

       THE COURT:  So which count would that go

  to?

       MR. WHERRY:  With Enterprise lease

  agreement, the language of count number four, I would

  think that would be appropriate that it would be

  count number four that that related to.

       THE COURT:  All right.  What about count

  five?

       MR. WHERRY:  Other than the witness saying

  she made about three trips with Mr. Garza for the

  purpose of purchasing methamphetamine in Orlando,

  that would be I think the best we could say in regard

  to counts five and three.

       THE COURT:  All right.  That would not be

  sufficient for a jury to consider beyond a reasonable

  doubt, so the court will grant a directed verdict as

  to counts three and five.

       Gentlemen, would you like to take a short

CHARGE CONFERENCE

250

1    recess before we call the jury back or are you ready

2    to proceed?

3         MR. DAVILA:  Yes, Your Honor, if we could

4    have a short recess.

5         THE COURT:  All right.  We'll take a ten

6    minute recess.

7         (BRIEF RECESS.)

8         THE COURT:  Has the defense had an

9    opportunity to go over the jury instructions that

10   have been submitted?

11        MR. EDMUND:  Yes, Your Honor, if it please

12   the court.

13        MR. DAVILA:  Yes, Your Honor.

14        MR. EDMUND:  Your Honor, might I refer the

15   court to instructions six through 11, sir?

16        THE COURT:  Okay.  I was going to give

17   instruction number 7 and leave out all of those.  I

18   was going to give one, two, three, four, seven and

19   then go on to thirteen.

20        MR. EDMUND:  I have no further objections,

21   if it please the court.

22        THE COURT:  But then there's some others

23   that I'm not going to give, we might go over those.

24   I'm not going to give the expert witness testimony

25   because there were no experts that have been

251

qualified.

1
2          MR. WHERRY:  Your Honor, the chemist, would
you exclude her as an expert, Your Honor?

3
4          THE COURT:  You never asked her to be
qualified as an expert, you just put her on the stand

5
6   and had her state that it was methamphetamine, but

7   you never qualified her as an expert.

8          Okay.  I'm up to 14, 15, 16 and 17.  Now,

9   I'll give 18, but if I give 18 then there's another

10  one here that I don't want to give because it gets

11  too repetitious.  Let me see.  The one about somebody

12  convicted of a felony.

13         MR. EDMUND:  Judge, may I interrupt you?  I

14  don't think Beavers was a felony conviction, Your

15  Honor, it was a fish and game violation and he was in

16  the county jail, if that's what you were referring

17  to, sir.

18         THE COURT:  Well, I was actually, the fact

19  that both Beaver and Robin Gilliard have pled to this

20  case would be a felony.

21         MR. EDMUND:  Thank you, Judge.  But I would

22  waive it if Your Honor would allow us to waive it, if

23  counsel would waive it, because everybody knows they

24  pled and what effect is that really going to have on

25  their testimony since you're giving us the

CHARGE CONFERENCE

252

co-defendant instruction.

THE COURT:  Well, I think I'd rather give 18 than seven.  They get duplicious.  So I'll give 18.

MR. EDMUND:  Yes, sir.  Thank you.

THE COURT:  Nineteen, 20.  There's been no similar act that applies.  I'm not going to give 21. 22, 23, 24.

Mr. Wherry, if I give 25, I'm not going to give 23 because that just gets too confusing, so I'll give 25 which is the conspiracy, the normal standard conspiracy count.

MR. WHERRY:  Give 25, you'll omit 23, correct?

THE COURT:  Yes.  And then 26 is the attempt, I'll give that.

MR. EDMUND:  Did you say you would not give 23, Your Honor, if you give 25?

THE COURT:  Right.

MR. EDMUND:  In this case.

THE COURT:  Unless you specifically want it.

MR. EDMUND:  I specifically would request that you give 23, if it please the court.

THE COURT:  All right.  I'll give 23 then.

CHARGE CONFERENCE

253

1    MR. DAVILA:  Judge, I would ask that it not
2    be given, Judge.

3    MR. EDMUND:  I'm reading the buy-sell
4    instruction.

5    THE COURT:  Well, it's not a standard
6    instruction.  The court likes to give standard
7    instructions.  If any of the defendants object, I
8    will not give it.

9    MR. DAVILA:  For 23, Your Honor?

10    THE COURT:  Yeah.

11    MR. EDMUND:  Everybody's got to represent
12    their client, sir.  I move for it, sir.

13    THE COURT:  Because it is not a standard
14    instruction, the court will not give 23.

15    MR. EDMUND:  Thank you, Your Honor.

16    THE COURT:  Okay.  If each side has, each
17    defendant and the government, will half hour be
18    sufficient for closing?

19    MR. EDMUND:  Did you say half hour, sir?
20    It is for Mr. Kackley, Your Honor.

21    MR. DAVILA:  That's all I need, Judge.

22    MR. WHERRY:  Fine, Your Honor.

23    THE COURT:  All right.

24    MR. WHERRY:  Could I ask one question?  In
25    regard to the one we have marked number 13, did you

254

1    say you were going to give that or not give it?

2           THE COURT:  Thirteen?

3           MR. WHERRY:  Yes, sir.

4           THE COURT:  Yes, I'm giving 13.

5           MR. WHERRY:  If you're going to give it, I

6    presume you're going to delete what we had there as

7    counts three and five.

8           THE COURT:  That's correct.

9           MR. WHERRY:  Could we also include count

10   number seven which we hadn't included if that would

11   be appropriate to put it in there?

12          THE COURT:  So it will be counts four, six

13   and seven, correct?

14          MR. WHERRY:  Yes, sir.

15          THE COURT:  I'm going to ask the defense if

16   they're ready to proceed so that you can rest your

17   case before the jury.

18          MR. EDMUND:  We're ready to proceed and the

19   defendant, Enrique Garza --

20          THE COURT:  No.  I mean I'm going to wait

21   until the jury comes in so you can say that.

22          (JURY IN.)

23          THE COURT:  Ladies and gentlemen, the

24   government has rested its case.  At this time the

25   defense has an opportunity to proceed.

CHARGE CONFERENCE

1      MR. EDMUND:   If it please, Your Honor, the

defendant Enrique Garza rests.

2      MR. DAVILA:   Your Honor, defendant Juan

3   Garza also rests.

4      THE COURT:   All right.   Ladies and

5   gentlemen, the evidence in this case has been

6   completed.   The attorneys now will have an

7   opportunity to give you their closing arguments.

8      Mr. Wherry, do you wish to reserve any time

9   for rebuttal?

10      MR. WHERRY:   Yes, Your Honor.

11      THE COURT:   How much?

12      MR. WHERRY:   I would say about ten minutes.

13      THE COURT:   All right, sir.

14      (CLOSING ARGUMENTS PRESENTED.)

256

1      THE COURT:  Members of the jury, I'm now

2  going to instruct you on the law that you must follow

3  in deciding this case.  You won't need to take any

4  notes because you will have a copy of these

5  instructions to take back with you as well as a copy

6  of the indictment.

7      It will be your duty to decide whether the

8  government has proved beyond a reasonable doubt the

9  specific facts necessary to find each defendant

10 guilty of the crime charged in the indictment.  You

11 must make your decision only on the basis of the

12 testimony and other evidence presented here during

13 trial.  You must not be influenced in any way by

14 either sympathy or prejudice for or against a

15 defendant or the government.  You also must follow

16 the law as I explain it to you, whether you agree

17 with the law or not.  You must follow all of the

18 instructions as a whole.  You may not single out or

19 disregard any of the instructions.

20      The indictment or formal charge against any

21 defendant is not evidence of guilt.  Indeed, a

22 defendant is presumed by law to be innocent.  The law

23 does not require a defendant to prove his innocence

24 nor to produce any evidence at all.  The government

25 has the burden of proving a defendant guilty beyond a

*JURY INSTRUCTIONS*

257

reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

Thus, while the government's burden of proof is a strict or heavy burden, it is not necessary that a defendant's guilt be proved beyond all possible doubt. It is only required that the government's proof exclude any reasonable doubt concerning the defendant's guilt.

A reasonable doubt is a real doubt based upon reason and common sense after careful and impartial consideration of all of the evidence in the case.

Proof beyond a reasonable doubt therefore is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

If you are convinced that a defendant has been proved guilty beyond a reasonable doubt, say so; and if you are not convinced, say so.

You must consider only the evidence that has been admitted into the case. The term evidence includes the testimony of the witnesses and the exhibits admitted into the record. Remember anything the lawyers say is not evidence.

258

In considering the evidence, you must make deductions and reach conclusions which reason and common sense lead you to make. You should not be concerned about whether the evidence was direct or circumstantial.

Direct evidence is the testimony of one who asserts actual knowledge about a fact such as an eyewitness, whereas circumstantial evidence is the proof of a chain of facts and circumstances indicating that a defendant is either guilty or not guilty. And the law makes no distinction between the weight that you can give to either direct or circumstantial evidence.

Now, in saying that you must consider all of the evidence, this does not mean that you must accept all of the evidence as being true and accurate. You should decide whether you believe what each witness had to say or how important that testimony was. In making that decision you may believe or disbelieve any witness in whole or in part. Also, the number of witnesses testifying concerning any particular dispute is not controlling. You may decide that the testimony of a smaller number of witnesses as to some fact is more compelling than the testimony of a larger number of

259

witnesses to the contrary.

In deciding whether you believe or do not believe a witness, ask yourself a few questions. Did the person impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have an opportunity and ability to observe accurately the things about which the witness testified? Did the witness appear to understand the questions clearly and answer them directly? And did the witness's testimony differ from the testimony of any other witness?

Also, the testimony of some witnesses must be considered with more caution than the testimony of other witnesses. In this case the government called as a witness two persons named as co-defendants in the indictment with whom the government has entered into a plea agreement providing for the dismissal of some charges and a lesser sentence than the witness would otherwise be exposed to for the offense of which the witness pled guilty. Such plea bargaining as it's called has been approved as lawful and proper and is expresslyly provided for in the rules of

court.

However, a witness who hopes to gain a more favorable treatment in his or her own case may have a reason to make a false statement because he or she wants to strike a good bargain with the government. So while a witness of this kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses. And of course, the fact that a witness has pled guilty to the crime charged in this indictment is not evidence in and of itself of the guilt of any other person.

The indictment charges several separate offenses called counts. I won't read them to you because you will have a copy of the indictment to take back with you for your deliberations. In summary, count one charges that the defendants knowingly and willfully conspired together to possess with intent to distribute a detectable amount of methamphetamine. Counts four, six and seven charges commission of substantive offenses, namely that the defendants possessed with intent to distribute a quantity of methamphetamine. That's four and six. Seven is the attempt to possess with intent to distribute methamphetamine.

JURY INSTRUCTIONS

261

1    In count one you will note, however, that

2    the defendants are not charged with a count of

3    violating Section 841 which are the substantive

4    counts, but are charged with conspiring to do so in

5    violation of a separate count which is 21 United

6    States Code, Section 846.

7    Title 21, United States Code, Section 846,

8    makes it a separate federal crime or offense for

9    anyone to conspire or agree with someone else to do

10   something which, if actually carried out, would be a

11   violation of Section 841, which is the actual

12   possession count.  Section 841 makes it a crime for

13   anyone to knowingly possess methamphetamine with the

14   intent to distribute it.

15   So under the law, a conspiracy is an

16   agreement or a kind of partnership in criminal

17   purposes in which each member becomes the agent or

18   partner with every other member.

19   In order to establish a conspiracy offense,

20   it is not necessary for the government to prove that

21   all of the people named in the indictment were

22   members of the scheme or that those who were members

23   had entered into any formal type of agreement.  Also,

24   because the essence of the conspiracy is the making

25   of the scheme itself, it is not necessary for the

ANTHONY ROLLAND, RMR
(407) 648-2288

*JURY INSTRUCTIONS*

1   government to prove that the conspirators actually

2   succeeded in accomplishing their unlawful plan.

3           What the evidence must prove beyond a

4   reasonable doubt is, first, that two or more persons

5   in some way or some manner came to a mutual

6   understanding to try to accomplish a common and

7   unlawful plan as charged in the indictment; and

8   second, that the defendant knowingly and willfully

9   became a member of the conspiracy.

10          A person may become a member of a

11  conspiracy without full knowledge of all the details

12  of the unlawful scheme or even the names and

13  identities of all of the other alleged conspirators.

14  So if a defendant has an understanding of the

15  unlawful nature of the plan and knowingly and

16  willfully joins in that plan on one occasion, that is

17  sufficient to convict him for conspiracy, even though

18  he had not participated before and even though he

19  played only a minor part.

20          Of course, mere presence at the scene of a

21  transaction or event or the mere fact that certain

22  persons may have associated with one another or may

23  have assembled together and discussed common aims and

24  interests does not necessarily establish proof of a

25  conspiracy.  Also, a person who has no knowledge of a

JURY INSTRUCTIONS

1    conspiracy but who happens to act in some way which

2    advances the purpose of one does not thereby become a

3    conspirator.

4         If you find that the defendant is guilty of

5    a conspiracy count as charged in the indictment, you

6    may also find the defendant guilty of a substantive

7    offense as charged in the other related count in the

8    indictment provided that you find the essential

9    elements of that count as defined in these

10   instructions, other than the element of aiding and

11   abetting, have been established beyond a reasonable

12   doubt.  First, that the offense defined in the

13   substantive count was committed by a co-conspirator

14   pursuant to the conspiracy and, second, that the

15   defendant was a member of the conspiracy at the time

16   the substantive offense was committed.

17        Under the conditions just defined, a

18   defendant may be found guilty of a substantive count

19   even though he did not participate in the acts

20   constituting the offense as defined in the

21   substantive count.  The reason for this is that the

22   co-conspirator committing the substantive offense

23   pursuant to the conspiracy is held to be an agent of

24   the other conspirator.

25        Title 21, United States Code, Section 841

264

1    *makes it a federal crime for anyone to possess a*

2    *controlled substance with the intent to distribute*

3    *it.   Methamphetamine is a controlled substance within*

4    *the meaning of the law.*

5         *A defendant may be found guilty of that*

6    *offense only if the following facts are proved beyond*

7    *a reasonable doubt:  First, that the defendant*

8    *knowingly and willfully possessed methamphetamine as*

9    *charged; and second, that the substance was possessed*

10   *with the intent to distribute it.  To possess with*

11   *intent to distribute simply means to possess with the*

12   *intent to deliver it or transfer possession of the*

13   *controlled substance to another person with or*

14   *without any financial interest in the transaction.*

15        *Title 21, Section 846 makes it a separate*

16   *federal crime for anyone to attempt to do something*

17   *which, if actually carried out or completed, would be*

18   *a violation of Section 841.  Section 841 makes it a*

19   *crime for anyone to knowingly possess methamphetamine*

20   *with the intent to distribute it.*

21        *In order to prove the charge of attempting*

22   *to commit the crime, it is necessary that the*

23   *evidence establish beyond a reasonable doubt, first,*

24   *that the defendant intended to commit the crime*

25   *charged and, second, that the defendant willfully*

JURY INSTRUCTIONS

265

1    took some action that was a substantial step in an

2    effort to bring about or accomplish the crime.  Mere

3    intention to commit the specific crime does not

4    amount to an attempt.

5         In order to convict a defendant of an

6    attempt, you must find beyond a reasonable doubt that

7    the defendant intended to commit the crime charged

8    and that he took some action which was a substantial

9    step toward the commission of that crime.  In

10   determining whether the defendant's actions amounted

11   to a substantial step toward the commission of a

12   crime, it is necessary to distinguish between mere

13   preparation on the one hand and the actual doing of

14   the criminal deed on the other.

15        Mere preparation which may consist of

16   planning the offense or divising, obtaining or

17   arranging a means for its commission, is not an

18   attempt, although some preparation may amount to an

19   attempt.

20        The acts of a person who intends to commit

21   a crime will constitute an attempt where the acts

22   themselves clearly indicate an intent to willfully

23   commit the crime, and the acts are a substantial step

24   in a course of conduct planned to culminate in the

25   commission of the crime.

ANTHONY ROLLAND, RMR
(407) 648-2288

*JURY INSTRUCTIONS*

266

1       *The law recognizes several kinds of*

2   *possession.  A person may have actual possession or*

3   *constructive possession, a person may have sole*

4   *possession or joint possession.  A person who has*

5   *direct physical control over something on or about*

6   *his person is in actual possession of it.  A person*

7   *who is not in actual possession but who has both the*

8   *power and the intention to later take control over*

9   *something either alone or together with someone else*

10  *is in constructive possession of it.  If a person*

11  *alone has possession of something, the possession is*

12  *sole.  If two or more persons take possession and*

13  *share possession, possession is joint.  Whenever the*

14  *word possession is used in these instructions, it*

15  *includes actual as well as constructive possession,*

16  *and sole as well as joint possession.*

17      *The guilt of a defendant in a criminal case*

18  *may be proved without evidence that he personally did*

19  *every act involved in the commission of the crime*

20  *charged.  The law recognizes that anything a person*

21  *can do for himself may also be accomplished through*

22  *direction or control of another person as an agent or*

23  *by acting together with or under the direction of*

24  *another person or persons in a joint effort.  So if*

25  *the acts or conduct of an agent, employee or other*

JURY INSTRUCTIONS

267

1    associate of a defendant is willfully directed or

2    authorized by the defendant, or if the defendant aids

3    and abets another person by willfully joining

4    together with that person in the commission of a

5    crime, then the law holds the defendant responsible

6    for the conduct of the other person just as though

7    the defendant had engaged in such conduct himself.

8         Notice, however, that before any defendant

9    can be held criminally responsible for the conduct of

10   another, it is necessary that the defendant willfully

11   associate himself in some way with the crime and

12   willfully participate in it.  Mere presence at the

13   scene of the crime or even knowledge that the crime

14   is being committed is not sufficient to establish

15   that the defendant either directed or aided and

16   abetted the crime.  You must find beyond a reasonable

17   doubt that the defendant was a willful participant

18   and not merely a knowing spectator.

19        You will note that the indictment charges

20   that the offense was committed on or about a certain

21   date.  The government does not have to prove with

22   certainty the exact date of a alleged offense.  It is

23   sufficient if the government proves beyond a

24   reasonable doubt that the offense was committed on a

25   date reasonably near the date alleged.

JURY INSTRUCTIONS

268

1    The word knowingly as it is used in these
2    instructions means that the act was done voluntarily
3    and intentionally and not because of mistake or
4    accident.  And the world willfully means that the act
5    was committed voluntarily and purposely with the
6    specific intent to do something that the law forbids,
7    that is, with bad purpose to either disobey or
8    disregard the law.

9    A separate crime is charged against one or
10   more of the defendants in each count of the
11   indictment.  Each offense and the evidence pertaining
12   to it should be considered by you separately.  Also,
13   the case of each defendant should be considered by
14   you separately and individually.  The fact that you
15   may find one or more of the defendants guilty or not
16   guilty of any of the offenses charged should not
17   affect your verdict as to any other offense or any
18   other defendants.

19   You are here to determine from the evidence
20   whether a defendant is guilty or not guilty.  The
21   defendant is on trial only for the specific offenses
22   alleged in the indictment.  Also, the question of
23   punishment should never be considered by a jury in
24   any way in deciding the case.  If you find a
25   defendant is convicted, the matter of punishment is

ANTHONY ROLLAND, RMR
(407) 648-2288

1  *solely for me to determine.*

2       *Any verdict that you reach in the jury*

3  *room, whether it be guilty or not guilty, must be*

4  *unanimous.  In other words, to return a verdict you*

5  *must all agree.  Your deliberations will be in secret*

6  *and you never will have to explain your verdict to*

7  *anyone.  It is your duty as jurors to discuss the*

8  *case with one another in an effort to reach an*

9  *agreement, if you can do so.  Each of you must decide*

10  *the case for yourself, but only after full*

11  *consideration of the evidence with the other members*

12  *of the jury.  While you are discussing the case, do*

13  *not hesitate to re-examine your own opinion and*

14  *change your mind if you become convinced that you*

15  *were wrong.  But do not give up your honest belief*

16  *solely because the others may think differently or*

17  *merely to get the case over with.  Remember that you*

18  *are judges of the facts and your only interest is to*

19  *seek the truth from the evidence in the case.*

20       *When you go back to the jury room you*

21  *should first select a person who will act as a*

22  *foreperson.  The foreperson will preside over your*

23  *deliberations and will speak for you in court.  You*

24  *will be given two verdict forms.  One, we, the jury,*

25  *find the defendant Enrique Garza blank as to counts*

270

1    one, four, six and seven.  You merely fill in either

2    guilty or not guilty in each blank, have the

3    foreperson sign and date the verdict.

4         The second verdict form is we, the jury,

5    find the defendant Juan Garza blank as to counts one,

6    six and seven.  Fill in either guilty or not guilty

7    as to each count, have the foreperson sign and date

8    the verdict form.

9         Now, if you should wish to communicate with

10   the court and ask any questions, the foreperson

11   should write the question on a piece of paper, hand

12   it to the bailiff, the bailiff will deliver it to me,

13   I will go over the question with the attorneys and

14   get an answer back to you as soon as possible.

15   However, the lawyers cannot produce any additional

16   evidence for you, the lawyers can't produce any

17   additional testimony.  If you have find any conflicts

18   in the testimony, that is your job to collectively

19   resolve those conflicts amongst yourselves so that

20   the only questions that you might have is for the

21   court to resolve any legal questions that you might

22   have regarding any of the instructions.

23        When you go back to the jury room I'm going

24   to have the bailiff order lunch for you so that you

25   can eat your lunch while you are deliberating, and

*JURY INSTRUCTIONS*

271

1    also because some of the evidence is a controlled

2    substance, I'm going to ask the bailiff to show you

3    that evidence and then take that out of the jury room

4    while you're deliberating.  If for any reason you

5    need to see it again, ask the bailiff and you can

6    take a look at it a second time if you wish.

7         Mrs. Fine, you were the alternate in this

8    case and the evidence moved quickly and all of the

9    jurors, the other jurors were able to hear all of the

10   evidence so you will be excused at this time.  Thank

11   you very much for your consideration.  The rest of

12   you may now retire to deliberate.

13        (JURY OUT.)

14        THE COURT:  Are there any objections for

15   the record of any instructions given to the jury?

16        MR. EDMUND:  Not by the defendant, Enrique

17   Garza, Your Honor.

18        MR. DAVILA:  None, Your Honor, as far as

19   Mr. Juan Garza.

20        MR. WHERRY:  No, Your Honor.

21        THE COURT:  I've ordered lunch for the

22   jury.  I've got to empanel a grand jury at noon.  I

23   would guess that you all can be free until at least

24   one o'clock and if you're not in the courtroom after

25   one, let Al know where you will be so that you can be

272

1    reached on short notice in case there's a question.

2    So we'll stand in recess.

3         (TRIAL RECESSED.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

273

# C E R T I F I C A T E

STATE OF FLORIDA:

COUNTY OF ORANGE:


        I, ANTHONY ROLLAND, being United States

Court Reporter, United States District Court, Middle

District of Florida, Orlando Division, do hereby

certify that I was authorized to and did report in

shorthand the above and foregoing proceedings, and

that thereafter my shorthand notes were transcribed

under my supervision, and that the foregoing pages

contain a true and correct transcription of my

shorthand notes taken therein.

        Done and signed this 9TH day of September,

1996, in the City of Orlando, County of Orange, State

of Florida.


                                _____
                                ANTHONY ROLLAND
                                U.S. Court Reporter
                                United States District Court
                                Middle District of Florida
                                Orlando Division

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | PRESENTENCE INVESTIGATION REPORT |
| v. | ) | Docket No. 96-19-CR-ORL-18 |
| | ) | |
| Enrique Garza | ) | |
| a/k/a "Henry" | ) | |

**Prepared For:**

The Honorable G. Kendall Sharp
United States District Judge

**Prepared By:**

J. Curtis Towers, Jr.
United States Probation Officer
Orlando, Florida  (407) 648-6371

**Assistant United States Attorney:**

Kendell W. Wherry, Esquire
Room 201, 80 North Hughey Avenue
Orlando, Florida  32801  (407) 648-7500

**Defense Counsel:**

Jack T. Edmund, Esquire (Retained)
423 Pool Branch Road
Fort Meade, Florida  33841  (941) 285-1228
and
Steve D. Kackley, Esquire (Retained)
357 South Orange
Sebring, Florida  33870-3738  (941) 385-5144

**Sentencing Date:**

July 17, 1996

**Offense of Conviction:**

**Count One:**  Conspiracy To Possess With Intent To Distribute Methamphetamine (21 U.S.C.  § 846) LIFE/$8,000,000 fine.

**Count Six:**  Possession With Intent To Distribute Methamphetamine [21 U.S.C.  § 841(a)(1)] LIFE/$8,000,000 fine.

**Count Seven:**  Attempted Possession With Intent To Distribute Methamphetamine [21 U.S.C. § 846] LIFE/$8,000,000 fine.

**Mandatory Minimum Applies:**

Yes (LIFE)

**Plea or Verdict:**

Found guilty by a jury on May 2, 1996.

CONFIDENTIAL
PROPERTY OF U. S. COURTS
SUBMITTED FOR OFFICIAL USE OF
U. S. PAROLE COMMISSION AND
FEDERAL BUREAU OF PRISONS.
THE REPORT MAY BE DISCLOSED
TO THE INMATE.

July 9, 1996

RE: Garza, Enrique

<u>Date of Arrest\Release Status:</u>

February 2, 1996\Ordered detained on February 5, 1996; currently incarcerated at the John E. Polk Correctional Facility, 211 Bush Boulevard, Sanford, Florida, 32771.

<u>Identifying Data:</u>

Social Security No.: 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
U.S. Marshal No: 18258-018
FBI No: 861755N10
Address: 3 South Hickory Street
           Zolfo Springs, Florida   33890

Date of Birth: January 4, 1954 (Age 42)
Race: White, Hispanic
Sex: Male
Citizenship: United States
Dependents: Three (Wife & Two Children)
Education: Six years

<u>Detainers:</u>

None

<u>Codefendants:</u>

<u>Juan Garza:</u>  Found guilty of Conspiracy To Possess With Intent To Distribute Methamphetamine, Possession With Intent To Distribute Methamphetamine and Attempted Possession With Intent To Distribute Methamphetamine. Sentencing is scheduled for July 17, 1996.

<u>Bruce F. Beaver:</u>  Pled guilty to Possession With Intent To Distribute Methamphetamine on March 26, 1996. Sentenced on June 19, 1996 to 168 months Bureau of Prisons and a term of supervised release of 60 months.

<u>Robin A. Gilliard:</u>  Pled guilty to Conspiracy To Possess With Intent To Distribute Methamphetamine on April 30, 1996. Sentencing is scheduled for July 17, 1996.

<u>Related Cases:</u>

Docket No. 95-224-CR-ORL-18

<u>Juan Lopez:</u>   Pled guilty on March 1, 1996, to Conspiracy To Possess With Intent To Distribute Methamphetamine. Sentenced on June 19, 1996 to 63 months Bureau of Prisons and a term of supervised release of 36 months.

<u>Tina Lopez:</u>   Pled guilty on March 1, 1996, to Conspiracy To Possess With Intent To Distribute Methamphetamine. Sentenced on June 19, 1996 to 51 months Bureau of Prisons and a term of supervised release of 36 months.

July 9, 1996

**RE: Garza, Enrique**

**Related Cases (continued)**

**Todd Ginnity:**   Pled guilty on January 30, 1996, t
Conspiracy To Possess With Intent To Distribut
Methamphetamine. Sentenced on May 22, 1996 to 5
months Bureau of Prisons, followed by a term o
supervised release of three years.

**Aliases:**

"Enrique Cruz-Garza"
"Henry Garza"
"Ricky Garza"
"Enrique Henry Garza"

July 9, 1996

RE: Garza, Enrique

## PART A.  THE OFFENSE

### Charges and Convictions

1.   The defendant, Enrique Garza aka "Henry", and codefendants Bruce F. Beaver, Juan Garza aka "Johnny", and Robin A. Gilliard, were named in a seven count Indictment returned by the Grand Jury for the Middle District of Florida, Orlando Division, on February 8, 1996.  The defendant was named in Counts One and Three through Seven only.   Count One charges that beginning on or about September 15, 1994, and continuing through on or about February 2, 1996, in Orange County, Florida, in the Middle District of Florida, and elsewhere, the defendant, Enrique Garza aka "Henry", and codefendants Bruce F. Beaver, Juan Garza aka "Johnny" and Robin A. Gilliard, did knowingly, wilfully, and intentionally conspire to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846.   Count Three charges that on or about May 1, 1995, in Orange County, Florida, in the Middle District of Florida, Enrique Garza aka "Henry," did knowingly, intentionally, and unlawfully possess with intent to distribute methamphetamine, all in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Counts Four and Five charge that on or about June 1, 1995, and on or about July 1, 1995, in Orange County, Florida, in the Middle District of Florida, Enrique Garza aka "Henry," did knowingly, intentionally and unlawfully possess with intent to distribute methamphetamine, all in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.   Count Six charges that on or about August 1, 1995, in Orange County, Florida, in the Middle District of Florida, Enrique Garza aka "Henry" and Juan Garza aka "Johnny", did knowingly and intentionally possess with intent to distribute methamphetamine, all in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Count Seven charges that on or about January 1, 1996, in Orange County, Florida, in the Middle District of Florida, Enrique Garza aka "Henry," Juan Garza aka "Johnny", and Robin A. Gilliard, did knowingly, intentionally and unlawfully attempt to possess with intent to distribute methamphetamine, all in violation of 21 U.S.C. § 846.

2.   On April 22, 1996, the government filed a notice of intent to seek an enhanced punishment under 21 U.S.C. § 851, as to the defendant, Enrique Garza aka "Henry."

3.   On May 1, 1996, jury trial commenced before the Honorable G. Kendall Sharp.  On May 2, 1996, the jury returned a guilty verdict against the defendant, as to Counts One, Six and Seven of the Indictment.  A jury verdict of not guilty was returned as to Counts Three and Four of the Indictment, and a judgment of acquittal was granted as to Count Five of the Indictment.  Sentencing was scheduled for July 17, 1996.

4.   This offense was completed on February 2, 1996, and the guidelines in effect at the time of sentencing were applied to the facts of this case.

RE: Garza, Enrique

PART A.  THE OFFENSE (continued)

Offense Conduct

5.   This investigation was conducted by agents with the Drug Enforcement Administration, as well as members of the Metropolitan Bureau of Investigation.

6.   The investigation began as agents became aware of the methamphetamine trafficking of co-offenders Todd Ginnity, Juan Lopez and Tina Lopez.  With the assistance of numerous reliable confidential sources, court-ordered wire taps and search warrants, agents were able to substantiate the following facts.

7.   On October 28, 1995, Todd Ginnity was arrested for trafficking in methamphetamine. According to agents, on October 26, 1995, a suspicious package was sent to an individual named Doug Russell.  The package was sent to Russell via Federal Express and was found to have contained five pounds of methamphetamine.  Ginnity was arrested after he retrieved the package from Russell.

8.   Following Ginnity's arrest, he admitted to agents he received his methamphetamine from his cousin, Tina Lopez, and her husband, Juan Lopez.  The couple lived in El Sobrante, California.  Ginnity stated that the Lopez's were major methamphetamine traffickers, whose sole source of income was dealing in methamphetamine.   A controlled telephone call was later made to the Lopez's and they acknowledged their involvement in the distribution of methamphetamine.

9.   The investigation continued and revealed the Lopez's and Todd Ginnity provided methamphetamine to other individuals in the Central Florida area, including Bruce Beaver, Enrique Garza and Juan Garza.

10.   On January 1, 1996, Enrique Garza negotiated with a confidential informant to purchase a pound or more of methamphetamine.  Over the course of the next four weeks, during numerous recorded phone conversations controlled by agents, Enrique Garza arranged the details of the delivery of the methamphetamine.  The methamphetamine was to be delivered by the confidential informant to Enrique Garza in Orlando, Florida.   Enrique Garza was to pay $16,000 per pound for the methamphetamine.

11.   On February 2, 1996, Enrique Garza paged the confidential informant.  When the confidential informant called in response to the page, Enrique Garza asked the confidential informant if he/she would accept $6,000 in cash as a down payment for one pound of methamphetamine and asked the confidential informant to allow him to pay the remaining $10,000, after he sold the methamphetamine.  The confidential

RE: Garza, Enrique

PART A.  THE OFFENSE (continued)

informant and Enrique Garza agreed to meet at a hotel on Lee Road in Orange County, Florida.

12. Later on February 2, 1996, the confidential informant telephoned Enrique Garza at his hotel room.  They agreed the confidential informant would travel to Garza's hotel room, count the money, depart the room and return later with the methamphetamine.

13. Pursuant to the agent's instructions, the confidential informant went to Enrique Garza's hotel room on Lee Road.  Agents observed the confidential informant enter the hotel room.  While the confidential informant was inside the room, surveillance agents observed Juan Garza arrive in the hotel parking lot in a Chevrolet Corvette.  Juan Garza exited his car and entered Enrique Garza's hotel room.  The confidential informant left the hotel room a short time later.

14. The confidential informant advised agents that Juan Garza brought $6,000 to the hotel room and gave the money to Enrique Garza.  Enrique Garza then gave the money to the confidential informant.  The confidential informant gave the money to the agents, along with a tape recording made during the time the confidential informant was in the hotel room.  Agents then arrested Enrique Garza and Juan Garza in the hotel room while they were waiting for the methamphetamine.

15. On March 18, 1996, agents interviewed Juan Garza's former girlfriend, Amy Nichols. Nichols stated that approximately two to three weeks prior to August 26, 1995, she accompanied the Garzas to Orlando, Florida, where one pound of methamphetamine was purchased for $60,000.  She recalled that she and Juan Garza met Enrique Garza in a Holiday Inn Motel near Lee Road, in Orlando, Florida, and Enrique Garza eventually left the area.  Nichols assisted in counting the $60,000, which was later given to Todd Ginnity for the purchase of one pound of methamphetamine.  Although the cost per pound was approximately $20,000, the additional funds were payment for consigned methamphetamine.  Enrique Garza explained he was to receive a page when Ginnity was in the area to complete the deal.  Garza did not receive the page the first night, but was paged the following morning.  Ginnity and Juan Garza then met at an Eckerd Drug Store parking lot and approximately one hour later, Juan Garza was in possession of the methamphetamine.  It was then reported that ounce quantities were sold for $1,200 to $2,200, and "eight balls" for $325 to $450. It was believed this was the first pick-up Juan Garza made for Enrique Garza. Prior to this, Juan was a distributor of methamphetamine for Enrique Garza.  Nichols told agents Juan Garza was usually armed with a knife or firearm while he was distributing methamphetamine.

16. Paragraph deleted.

RE: Garza, Enrique

PART A.  THE OFFENSE (continued)

17.  Agents received information that co-offender, Janie Slaven, was involved in the distribution of methamphetamine.  Slaven recalled being contacted by co-offender, Dennis Masters, who told her he had a source of supply for methamphetamine.  He asked her if she could buy/sell three pounds of methamphetamine.  Slaven, knowing Beaver was in the position to distribute methamphetamine, contacted Beaver.  Beaver told her he was definitely interested.

18.  On September 15, 1994, Masters and the Lopez's arrived from California to the Orlando Airport Hyatt Hotel.  Shortly after their arrival, Slaven met with Tina Lopez to negotiate the sale of the methamphetamine.  Slaven provided that she and Beaver did not bring any cash.   Masters and Lopez stated they brought five pounds of methamphetamine with them to Florida.   Lopez refused to front any of the methamphetamine to Beaver and Slaven.  Beaver and Slaven eventually were able to obtain $4,000, and it was negotiated that Lopez would sell the drugs in quarter-pound increments.  Beaver and Slaven then returned to the Hardee County area, where the quarter-pound increments of methamphetamine was sold.  They then returned to Orlando, Florida, where a total of five pounds of methamphetamine were purchased and distributed in quarter-pound increments.  Slaven was with Beaver on only three of the trips.  He made the remaining trips without her.  Beaver continued to ask Slaven to assist him in selling the methamphetamine.

19.  After the September, 1994 time frame, Slaven made at least 15 trips to Orlando with Beaver for the purpose of purchasing methamphetamine.  Beaver at first purchased 1/2 pound, then 3/4 pound, and then after one month, the quantity increased to one pound increments of methamphetamine per trip.  Often the trips occurred twice per week.  After the first visit by Tina Lopez, she started sending the methamphetamine from California to Florida.  The drugs were then purchased from Todd Ginnity.  According to case agents, Beaver was involved in the distribution of at least 15 pounds of methamphetamine.

20.  Gilliard travelled to Orlando with Janie Slaven on at least ten occasions to purchase 1/2 pound or more of methamphetamine.  She also continued Beaver's distribution organization, at Beaver's direction, while he was incarcerated in the Florida Department of Corrections.  Gilliard would purchase the methamphetamine from Ginnity and would transport it back to Zolfo Springs, Florida, where it was sold to Enrique Garza.

21.  Agents conservatively estimate Enrique and Juan Garza were involved with the distribution of at least 40 pounds, or 18.14 kilograms of methamphetamine during this conspiracy.

July 25, 1996                          4

RE: Garza, Enrique

**PART A.  THE OFFENSE (continued)**

### Custody Status

22.   The defendant was arrested by Deputy United States Marshals on February 2, 1996, in Orlando, Florida.  Later that day, Garza appeared before United States Magistrate Judge James G. Glazebrook for initial appearance proceedings and was ordered temporarily detained pending a detention hearing.  On February 5, 1996, Garza appeared before United States Magistrate Judge James G. Glazebrook for a detention hearing and was ordered detained.  The defendant is currently incarcerated at the John E. Polk Correctional Facility, 211 Bush Boulevard, Sanford, Florida.

### Victim Impact

23.   There is no specifically identifiable victim.

### Adjustment for Obstruction

24.   The probation officer has no information suggesting that the defendant impeded or obstructed justice.

### Adjustment for Acceptance of Responsibility

25.   The defendant and his attorney have not provided a statement pertaining to the defendant's participation in this offense.

### Offense Level Computation

26.   Counts One, Six and Seven are grouped together because they consist of two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.  USSG § 3D1.2(b)

27.   Base Offense Level: The guideline for a violation of  21 U.S.C. § 841(a)(1) is located at USSG § 2D1.1.  Pursuant to USSG § 2D1.1(c)(2), a base offense level of 36 is applied to offenses involving at least 10 kilograms, but less than 30 kilograms of methamphetamine.                                                                                                          36

28.   Specific Offense Characteristics:  None.                                                              0

29.   Victim Related Adjustment:  None.                                                                      0

July 25, 1996                                        5

RE: Garza, Enrique

**PART A.  THE OFFENSE (continued)**

30.  Adjustment for Role in the Offense:  Since the defendant was an organizer or leader of a criminal activity that involved five or more participants, or was otherwise extensive, four levels are added.  USSG § 3B1.1(a).                                               4

31.  Paragraph deleted.

32.  Adjustment for Obstruction of Justice:  None.                                                0

33.  Adjusted Offense Level               (Subtotal)                                              40

34.  Adjustment for Acceptance of Responsibility:  The defendant has not demonstrated a recognition and affirmative acceptance of personal responsibility for his offense. USSG §3E1.1.                                                                              0

35.  Total Offense Level                                                                          40

36.  Chapter Four Enhancements:  None.

37.  The defendant is a career offender as defined in USSG §4B1.1.  He was age 41 when he committed the offense. The offense of conviction is a felony controlled substance offense, and the defendant had at least two prior felony convictions of either a crime of violence or a controlled substance offense.  These offenses consisted of convictions of controlled substance offenses on February 5, 1991, and July 5, 1994.  Since the statutory maximum is LIFE, the total offense level would become 37.  However, since the defendant's total offense level has already been calculated at 44, it remains at 44.


**PART B.  THE DEFENDANT'S CRIMINAL HISTORY**

<u>Criminal Convictions</u>

*(NOTE:  It is the policy of the Probation Office to assume that all defendants were represented by effective counsel or knowingly waived counsel, in convictions which occurred any time after 1972.)*


July 25, 1996                               6

RE: Garza, Enrique

**PART B.  THE DEFENDANT'S CRIMINAL HISTORY (continued)**

<u>Criminal Convictions</u>

| | Date of<br>Arrest | Charge/Court | Date Sentence<br>Imposed/<br>Disposition | Guideline/<br>Score |
|---|---|---|---|---|
| 38. | 05/24/72<br>(Age 18) | Assault & Battery<br>Hardee County Circuit<br>Court<br>Wauchula, Florida | 07/10/72: Adjudicated<br>guilty, $52 fine. | 4A1.2(e)    0 |

Details surrounding this offense were unavailable.

| | | | | |
|---|---|---|---|---|
| 39. | 07/17/73<br>(Age 19) | Reckless Driving<br>Hardee County Circuit<br>Court<br>Wauchula, Florida | Date Unknown: Driver's<br>license suspended for 30<br>days, $102 fine. | 4A1.2(c) & (e)    0 |

Details surrounding this offense were unavailable.

| | | | | |
|---|---|---|---|---|
| 40. | 02/15/75<br>(Age 21) | Involuntary Sexual Battery<br>Hardee County Circuit<br>Court<br>Wauchula, Florida<br>Case #75-41 | 08/19/75: Found guilty,<br>adjudicated guilty, five<br>years Florida State<br>Prison. | 4A1.2(e)    0 |

On February 15, 1975, the victim, Jo Helen Ray, came to the Hardee County Sheriff's Office and indicated she had been raped by two Mexican Americans. The Hardee County Sheriff's Office investigation revealed the following: Apparently, the victim and her cousins spent the evening together and ended up at the County Line Bar, just north of the city limits of Bowling Green, Florida in Hardee County. They went inside the bar and the victim asked a Mexican male if he had seen her boyfriend, Ricky Deleon. The man she talked to indicated he had not, but possibly some of his friends had. Shortly thereafter, the defendant and codefendant, Gilbert Fabila, came inside and started talking to Ms. Ray. She asked them if they knew Ricky Deleon and they stated they did. She proceeded to ask them if they would take her to where he possibly was. The defendant and Fabila stated they would take her to the location. They all got in the car and proceeded to go south on Highway 17 toward Wauchula. They approached the skating rink, drove through the parking lot and did not see Ricky Deleon. They then drove to the Wauchula Plaza to see if Ricky Deleon was there. They did not find Mr. Deleon, so they drove further down Highway 17 toward Zolfo Springs. At that point, they apparently turned off onto a dirt road. Ms. Ray got

July 25, 1996                                        7

RE: Garza, Enrique

**PART B.  THE DEFENDANT'S CRIMINAL HISTORY (continued)**

relatively scared and asked Garza where they were going.  She further indicated she saw a light on in a house down the road and they told her Ricky Deleon lived in that house.  They drove past the lighted house and turned into an orange grove.  At that point, the defendant got out of the car and left Ms. Ray with Fabila.  He had intercourse with Ms. Ray, climbed out of the car and put his clothes back on, at which point the defendant got into the car and also had intercourse with the victim.  Afterward, they allowed Ms. Ray to put her clothes back on, drove her to the proximity of her house and let her out.  Ms. Ray ran into her house crying, as had done throughout the ordeal, and her mother asked her what was wrong.  She told her mother she had been raped.  At that point, they went to the Sheriff's Office and a charge was made.

On August 16, 1977, the defendant was paroled, which expired on August 16, 1979.  Attorney representation was not noted in this case.

| | | | | | |
|---|---|---|---|---|---|
| 41. | 04/04/82 (Age 28) | Driving Under The Influence Hardee County Circuit Court Wauchula, Florida | Date Unknown: Adjudicated guilty, attend DUI school, $219 fine and costs. | 4A1.2(e) | 0 |

Details surrounding this offense were unavailable.

| | | | | | |
|---|---|---|---|---|---|
| 42. | 10/06/83 (Age 29) | Burglary Of A Dwelling Or Structure reduced to the lesser offense of Trespassing Hardee County Circuit Court Wauchula, Florida Case #83-158 | 10/21/83: Adjudicated guilty, four weekends in the County Jail, $150 public defender fee, $93.50 court costs. | 4A1.2(e) | 0 |

Garza was represented by the public defender in this case.  This offense involved Garza entering the residence of Ms. Judy Rogers without her permission.  No property was stolen.  Ms. Rogers requested Garza to leave on two occasions.  He did so on the second warning.

July 25, 1996                                         8

RE: Garza, Enrique

## PART B.  THE DEFENDANT'S CRIMINAL HISTORY (continued)

| | | | | | |
|---|---|---|---|---|---|
| 43. | 04/14/84<br>(Age 30) | Count One: Possession Of A Controlled Substance With Intent To Sell<br>Count Two: Possession Of A Controlled Substance-Cannabis Over 20 Grams<br>Hardee County Circuit Court<br>Wauchula, Florida<br>Case #84-109 | 10/23/84: Adjudicated guilty to both counts, Count One-five years probation, Count Two-One year probation to run concurrent with Count One, condition of probation-six months in Hardee County Jail, $256 fine to be paid at $10 per month, and drug evaluation, if necessary, 12/23/86: VOP, adjudicated guilty, six months County Jail with credit for six months time served. | 4A1.1(b) | 2 |

Garza was represented by the public defender in this case. On February 14, 1984, the Hardee County Sheriff's Office received a tip from a confidential informant that Garza was going to Bowling Green, Florida, for the purpose of obtaining drugs. Detectives responded to a telephone conversation with the Hillsborough County Sheriff's Office and located Garza driving a black Cougar and proceeded to follow it. Officers stopped the vehicle in Wauchula and Garza exited the vehicle. At this point, officers asked Garza if they could search his vehicle and he consented. Officers requested Garza open the trunk, which he did. In the trunk was a cardboard box, which contained a set of scales and numerous plastic baggies, along with what appeared to be cannabis residue. Officers then searched the interior of the vehicle and located a brown paper sack with what appeared to be marijuana. It was later tested and proved positive. The quantity of marijuana found was approximately 450 grams.

On April 8, 1986, Garza's probation was revoked, due to submitting a positive urinalysis for marijuana. Garza pled guilty to the revocation, was adjudicated guilty and placed on community control for two years. On December 23, 1986, community control was revoked for the following: 1) Violation of Condition 11-"You shall remain confined at your approved residence.", 2) Violation of Condition 13-"You shall maintain an hourly accounting of all your activities in a daily log.", and 3) Violation of Condition 17-"You shall not have in your possession, and you are to abstain from drinking any alcoholic beverages or consuming any illegal drugs."

July 25, 1996                                          9

RE: Garza, Enrique

**PART B.  THE DEFENDANT'S CRIMINAL HISTORY (continued)**

Garza pled guilty and was adjudicated guilty on the violation of probation.  He was sentenced to six months in the County Jail.

| | | | | | |
|---|---|---|---|---|---|
| 44. | 10/22/84 (Age 30) | Possession Of Cannabis Under 20 Grams Hardee County Circuit Court Wauchula, Florida | 11/05/84: Adjudicated guilty, ten days in jail. | 4A1.1(c) | 1 |

Details surrounding this offense were unavailable.

| | | | | | |
|---|---|---|---|---|---|
| 45. | 06/25/86 (Age 32) | Grand Theft Hardee County Circuit Court Wauchula, Florida Case #86-222 | 12/23/86: Adjudicated guilty, two years probation with the special condition he enter and successfully complete a drug treatment program, no alcohol, no drugs, $1,311 fine and costs, 09/14/88: VOP, adjudicated guilty, probation revoked, 2-1/2 years Florida State Prison. | 4A1.1(a) | 3 |

This offense occurred on February 27, 1986.  Garza allegedly approached several individuals at which time they offered to present him with four 1,000 x 20 trailer tires in exchange for $200.  One of the individuals informed investigators from the Hardee County Sheriff's Office that Garza agreed to the transaction and it was at that time they journeyed to Highland County, Florida, to obtain four trailer tires from a bulk hauler.  Investigators further reported that after the individuals obtained the tires, they returned to Garza's residence in Zolfo Springs, where he gave them $100, in addition to some marijuana, about a week later.  Garza admitted to his participation in this offense and further informed investigators the tires were sold to some unknown persons.  Garza was represented by attorney, Thomas Montgomery, in this case.

Garza's probation was revoked on September 14, 1988, for violation of the special condition to abstain from illegal drugs.  Urinalyses obtained on February 1, 1988, February 10, 1988, and February 16, 1988, indicated traces of cocaine and amphetamines.  He was sentenced to 2-1/2 years in the Florida State Prison. According to officials with the Florida Department of Corrections, Garza was

July 25, 1996                                              10

RE: Garza, Enrique

PART B.  THE DEFENDANT'S CRIMINAL HISTORY (continued)

incarcerated from September 16, 1988, until his release from custody on August 7, 1989.

| | | | | | |
|---|---|---|---|---|---|
| 46. | 05/22/90<br>(Age 36) | Possession Of A<br>Controlled Substance<br>(Methamphetamine)<br>Hardee County Circuit<br>Court<br>Wauchula, Florida<br>Case #90-177 | 02/05/91: Adjudicated<br>guilty, 2-1/2 years Florida<br>State Prison, credit for<br>11 days time served,<br>sentenced as an habitual<br>offender. | 4A1.1(a) | 3 |

On May 22, 1990, Garza purchased approximately one gram of methamphetamine from a confidential source.  This transaction was witnessed by detectives of the Hardee County Sheriff's Office.  The methamphetamine was supplied by officers and was tested before the transactions by the FDLE lab, as well as field tested after the transaction with positive results obtained on both occasions.  Garza was represented by attorney, Steve Kackley, in this case.  According to officials with the Florida Department of Corrections, the defendant was incarcerated from February 7, 1991, until his release from custody on September 4, 1992.

| | | | | | |
|---|---|---|---|---|---|
| 47. | 06/29/90<br>(Age 36) | Sale Or Possession With<br>Intent To Sell A Controlled<br>Substance<br>(Methamphetamine)<br>Hardee County Circuit<br>Court<br>Wauchula, Florida<br>Case #CF90-220 | 02/05/91: Adjudicated<br>guilty, two years<br>community control to run<br>consecutive to case<br>number 90-177,<br>08/09/94: VOP, serve<br>remainder of sentence in<br>jail. | 4A1.1(c) | 1 |

On June 19, 1990, Garza sold methamphetamine to a confidential source in exchange for $100.  The transaction was observed by detectives of the Hardee County Sheriff's Office, as it occurred at the North Circle K Store, located in Zolfo Springs, Florida.  The methamphetamine was seized from the informant and field tested positive.

Garza was placed on community control on February 5, 1991.  On August 9, 1994, community control was ordered modified and he was sentenced to serve the remaining period of supervision in jail.  Supervision terminated on September 3, 1994.  This modification was the result of "rock" cocaine use and Garza's failure to attend Alcoholic's Anonymous and Narcotic's Anonymous meetings, as previously instructed.

July 25, 1996 .                                          11

RE: Garza, Enrique

**PART B.  THE DEFENDANT'S CRIMINAL HISTORY (continued)**

### Criminal History Computation

48.  The criminal convictions above result in a subtotal criminal history score of 10.

(Subtotal)                                                                        10

49.  **The total of the criminal history points is 10.**  According to the sentencing table (Chapter 5, Part A), 10 to 12 criminal history points establish a criminal history category of V.

### Criminal History Enhancements

50.  According to USSG §4B1.1, a career offender's criminal history category in every case shall be Category VI.

### Other Arrests

| Date of Arrest | Charge/Court | Date Sentence Imposed/ Disposition |
|---|---|---|
| 51.  02/26/84 (Age 30) | Trespassing Hardee County Circuit Court Wauchula, Florida | 09/1184:  Nolle prossed. |

Details surrounding this offense were unavailable.

| | | |
|---|---|---|
| 52.  03/05/84 (Age 30) | Battery Hardee County Circuit Court Wauchula, Florida | 09/11/84: Nolle prossed. |

Details surrounding this offense were unavailable.

July 25, 1996                    12

RE: Garza, Enrique

**PART B.  THE DEFENDANT'S CRIMINAL HISTORY (continued)**

| | | | |
|---|---|---|---|
| 53. | 09/12/95<br>(Age 41) | Count One: Trafficking In<br>Heroin<br>Count Two: Possession Of<br>A Firearm By A Convicted<br>Felon<br>Count Three: Possession<br>Of Marijuana Less Than<br>20 Grams<br>Count Four: Possession Of<br>Drug Paraphernalia<br>Hardee County Circuit<br>Court<br>Wauchula, Florida<br>Case #95-409CF | 03/26/96: Nolle prossed<br>in open court. |

This case was dismissed, considering the defendant was facing federal charges.

| | | | |
|---|---|---|---|
| 54. | 10/08/95<br>(Age 41) | Possession Of A<br>Controlled Substance<br>Hardee County Circuit<br>Court<br>Wauchula, Florida<br>Case #95-435,<br>consolidated with Case<br>#95-409CF. | 03/26/96: Nolle prossed. |

This case involved the conduct comprising the current federal charges.


**PART C.  OFFENDER CHARACTERISTICS**

<u>**Personal and Family Data**</u>

55.  Enrique Garza was born on January 4, 1954, in Hutto, Texas.  He resided in Texas until age 14, when he and his family relocated to Hardee County, Florida, where he has remained a resident.  His father, Servando Garza, passed away in 1983, due to a heart attack.  The defendant's father had been employed as an agricultural crew leader prior to his death.  Garza's mother, Maria Cruz Garza, age 65, currently resides in Wauchula, Florida, where she is a retired housewife.


July 25, 1996                                                         13

RE: Garza, Enrique

**PART C.  OFFENDER CHARACTERISTICS (continued)**

56.    Garza has ten siblings: Jesus Garza, age 43, currently resides near Nashville, Georgia, where he is employed on a farm; Magdelena DeLeon, age 41, resides in Wauchula, Florida, where she is employed as a field foreman; Salvadore Garza, age 39, resides in Adrian, Michigan, where he is employed as a mechanic; Santos Garza, age 38, resides in Nashville, Georgia, where he is employed by a local tire company; Juan Garza, age 36, is incarcerated in the John E. Polk Correctional Facility, Sanford, Florida, and is a codefendant in this case; Raul Garza, age 34, resides in Amarillo, Texas, where he is employed as a truck driver; Linda Rena, age 32, resides in Wauchula, Florida, where she is employed as a field foreman; Juana Hughes, age 27, resides in Auburndale, Florida, where she attends nursing school; Maria Albritton, age 26, resides in Bowling Green, Florida, where she is employed as a nursing assistant; and Jose Garza, age 23, resides with the defendant's mother in Wauchula, Florida, and is unemployed, due to a disability.  The defendant also has a stepbrother, Pablo Rosas, age 45, who resides in Wauchula, Florida, where he is employed as an agricultural field foreman.  The defendant and his brother state that all their family members enjoy good relations with each other.

57.    On February 18, 1978, the defendant married the former Maria Garza, in Wauchula, Florida, and she has been employed as a food service worker at the Hardee County Junior High School, Wauchula, Florida, for the past 12 years.  This union produced two children: Eduardo Garza, age 16, and Erica Garza, age 12, currently reside at the family residence located at 3 South Hickory Street, Zolfo Springs, Florida, and both attend school in Wauchula, Florida.    Garza and his family have resided at this residence since 1979.  The home is described as a modest, middle-class dwelling.

58.    Garza's wife states she knew the defendant approximately four years prior to their marriage and they met in Wauchula, Florida.  She stated he has always been a good husband and has been real good to their children.  She stated he "can be a real nice person" and is "a good man, when not on drugs".  She estimates he has had a drug abuse problem "on and off" for approximately 15 years.  Mrs. Garza reported the defendant would stay away from their house for two to three days at a time, when abusing drugs.  However, he never emotionally or physically abused her or their children.  She verified the defendant and the members of his family enjoy good relations with each other.

**Physical Condition**

59.    Garza stands approximately five feet, eleven inches tall and weighs approximately 230 pounds.  His eyes are brown and his hair is black in color.  He reports no scars, marks, or tattoos.  He states he has no history of, nor does he suffer from any medical illness

July 25, 1996                              14

**RE: Garza, Enrique**

**PART C. OFFENDER CHARACTERISTICS (continued)**

or disease. He states he takes no prescription medication, nor is he under the care of a physician at this time.

**Mental and Emotional Health**

60. Garza denies any history of mental or emotional illness, nor the treatment for such illnesses.

**Substance Abuse**

61. Garza stated he consumed alcohol "occasionally" prior to his incarceration for this offense. He reported trying marijuana at the age of 25, using the substance only on one occasion.

62. Garza stated he began using cocaine at age 26, and used this substance on a daily basis. He reported using approximately $500 worth of cocaine per day. He stated he usually used cocaine hydrochloride; however, he began using "crack" cocaine prior to his arrest.

63. Garza also reported trying methamphetamine in 1979, using the substance up to the time of his arrest. He estimates he used approximately two grams of methamphetamine per day. He reports receiving substance abuse treatment in 1987 and 1993, in Avon Park, Florida.

64. Due to time constraints, a urinalysis was not conducted by the United States Pretrial Services Office upon the defendant's arrest.

**Education and Vocational Skills**

65. The defendant reports completing the sixth grade at Quanah Junior High School, Quanah, Texas, in 1968. He is a certified welder and is also skilled in automotive paint and body work.

**Employment**

66. Since 1979, Garza has been self-employed as a certified welder. This employment was verified by the defendant's wife and his brother, Juan.

July 25, 1996                                      15

RE: Garza, Enrique

**PART C.  OFFENDER CHARACTERISTICS (continued)**

<u>Financial Condition/Ability to Pay</u>

67.   The following information was obtained from a financial statement submitted by the defendant and a review of his credit report.  Items denoted with an asterisk indicate joint ownership and represent approximately 50% of their actual worth.

<u>NET WORTH</u>

**Cash**

| | |
|---|---|
| Wauchula Florida State Bank | *$75 |

**Unencumbered Assets**

| | |
|---|---|
| 1990 Ford Mustang Convertible | *$3,250 |

**Equity in Other Assets**

| | |
|---|---|
| Residence-3 South Hickory Street, Zolfo Springs, Florida | *$10,000 |

<u>Total Assets</u>                                                                        $13,325

**Unsecured Debts**

| | |
|---|---|
| Wauchula State Bank | $7,073 |
| Loan-Juan Garza | 21,000 |
| Dillard's Department Store | 38 |
| JC Penney | 156 |
| Capital One Card | 135 |

<u>Total Unsecured Debts</u>                                                    $28,402

<u>NET WORTH</u>                                                                 <$15,077>

68.   The defendant states that Cobb Construction Company owes him $22,500.  Once he receives this money owed to him, he will satisfy his debt to his brother, Juan.  Based upon the defendant's financial profile and the fact he is facing a mandatory term of imprisonment of LIFE, it appears he does not possess the ability to pay a fine at this time.

July 25, 1996                                   16

RE: Garza, Enrique

## PART D.  SENTENCING OPTIONS

### Custody

69.  **Statutory Provisions:**  As to each of Counts One, Six and Seven, the mandatory term of imprisonment is LIFE.  21 U.S.C. § 846 and 841(b)(1)(A).

70.  Paragraph deleted.

71.  **Guideline Provisions:**  Based on a total offense level of 40, and a criminal history category of VI, the guideline imprisonment range is 360 months to <u>LIFE</u>.  Additionally, **the guideline sentence is LIFE, as required by the above statutory provisions.**  USSG §5G1.1(c)(2).

### Supervised Release

72.  **Statutory Provisions:**  As to each of Counts One, Six and Seven, a term of supervised release of at least 10 years must be imposed.  21 U.S.C. § 846 and 841(b)(1)(A).

73.  **Guideline Provisions:**  Since the statute requires a term of supervised release of 10 years, the guideline requirement for a term of supervised release is 10 years.  USSG §5D1.2(b).

### Probation

74.  **Statutory Provisions:**  As to each of Counts One, Six and Seven, the defendant is ineligible for probation because probation is expressly precluded by statute. 21 U.S.C. § 846 and 841(b)(1)(A).

75.  **Guideline Provisions:**  The defendant is ineligible for probation because probation has been expressly precluded by statute.  USSG §5B1.1(b)(2).

### Fines

76.  **Statutory Provisions:**  As to each of Counts One, Six and Seven, the maximum fine is $8,000,000.  21 U.S.C. § 846 and 841(b)(1)(A).

77.  Since the offense was committed after December 11, 1987, the Criminal Fine Improvement Act is applicable.  That Act provides for no interest on fines of $2,500.00 or less. Interest on fines over $2,500.00 accrues beginning 15 days after the date of judgment and is based on the average Treasury Bill interest rate.  The interest rate is determined on a quarterly basis and is not compounded.  Interest can be waived or limited to a specific amount or for a specific time by the Court.  A

July 25, 1996 ·                              17

RE: Garza, Enrique

**PART D.  SENTENCING OPTIONS (continued)**

penalty of 10 percent on delinquent fines and 15 percent on fines in default may be imposed, as well as waived, for good cause.  A notice of default must be sent out within 30 days of default.

78.  Special assessments totalling $300 are mandatory.  18 U.S.C. § 3013.

79.  **Guideline Provisions:**  The fine range for this offense is from $25,000 [USSG §5E1.2(c)(3), Fine Table] to $24,000,000.  USSG §5E1.2(c)(4).

80.  Pursuant to USSG §5E1.2(i) the Court shall impose an additional fine amount that is at least sufficient to pay the costs to the government of any imprisonment, probation, or supervised release ordered, subject to the defendant's ability to pay.  These costs may include drug and alcohol and/or contract confinement costs.  The most recent advisory from the Administrative Office of the United States Courts, dated March 10, 1995, provides the following monthly cost data:

| | |
|---|---|
| Imprisonment (Federal prison facility) | $1,779.33 |
| Supervision | $ 195.30 |
| Contract Confinement | $1,183.08 |

Restitution

81.  **Statutory Provisions:**  Restitution is not applicable in this case.

Denial of Benefits

82.  **Statutory Provisions:**  The defendant, having been convicted on a third or subsequent drug distribution offense, is permanently ineligible for all federal benefits.  21 U.S.C. § 862(a)(1)(C).

83.  This section does not apply to any retirement, welfare, Social Security, health, disability, veterans benefits, public housing, or other similar benefits, or other benefits for which payments or services are required for eligibility.  21 U.S.C. § 862(d)(1)((B).

84.  **Guideline Provisions:**  The Court, pursuant to 21 U.S.C. § 862(a)(1)(A), may deny the eligibility for certain federal benefits of any individual convicted of distribution or possession of a controlled substance.  USSG §5F1.6.

July 25, 1996                                          18

RE: Garza, Enrique

## PART E.  FACTORS THAT MAY WARRANT DEPARTURE

*(NOTE:  Inclusion of a factor in this section does not constitute a recommendation for departure.)*

85.    The applicable guidelines, Part K of Chapter 5 and USSG §4A1.3, have been reviewed and there is no basis for departure.

Respectfully submitted,

J. Curtis Towers, Jr.
United States Probation Officer

JCT/sb

**Supervisor's Review:**

This Presentence Report has been reviewed for accuracy and completeness.

Kenneth L. Bray, Administrative Supervising
United States Probation Officer

The Sentencing Disposition Committee, composed of Administrative Supervising United States Probation Officer Kenneth L. Bray, Sentencing & Guideline Specialist United States Probation Officer Paul H. Hennessy, United States Probation Officer John W. Mason, and United States Probation Officer J. Curtis Towers, Jr., has reviewed this case and concurs with the guideline application.

CONFIDENTIAL
PROPERTY OF U. S. COURTS
SUBMITTED FOR OFFICIAL USE OF
U. S. PAROLE COMMISSION AND
FEDERAL BUREAU OF PRISONS.
THE REPORT MAY BE DISCLOSED
TO THE INMATE.

July 9, 1996                                    19